Based upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence AFFIRMS the Opinion and Award of the Deputy Commissioner with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer-employee relationship existed between the plaintiff-employee and defendant-employer.
3. The defendant-employer was insured with Travelers Insurance Company at all relevant times.
***********
RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Drs. Barron, Winfield and Hayes are OVERRULED. The twenty-three pages attached to the plaintiff's brief as Appendix Pages 1-23 constituting parts of the Industrial Commission file are admitted into evidence.
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 28 years of age and unemployed. Plaintiff's previous employment includes, but is not limited to construction, lawn care, furniture production, and welding. Plaintiff received his GED.
2. On October 19, 1993, while at work for defendant-employer, plaintiff sustained an admittedly compensable injury by accident when he slipped on a glove and fell injuring his left knee.
3. Defendants voluntarily paid temporary total disability benefits to plaintiff at the rate of $169.61 per week from October 19, 1993 until June 10, 1994. The benefits were not paid pursuant to an approved Form 21 agreement. Plaintiff signed a Form 21 agreement, but the agreement was never forwarded to the Industrial Commission for approval. The payments that were being made to the plaintiff were stopped by the defendants on June 10, 1994 without prior approval from the Industrial Commission. The stoppage of the payments was a blatant disregard for the provisions of the North Carolina Workers Compensation Act and the Rules of the Industrial Commission.
4. The plaintiff sought medical treatment from Dr. David James with Maiden Family Practice on October 20, 1993, who examined him and noted mild edema, pain and mild weakness. Dr. James recommended that the plaintiff work a total of three (3) days in a light duty sitting job. By October 25, 1993, the plaintiff was given restrictions of no heavy lifting, no bending and no reaching. The plaintiff was to perform only sitting activities for five (5) days. The plaintiff continued to work on light duty as directed by his doctor.
5. After an office visit with Dr. John James of Maiden Family Practice, plaintiff was released to return to work at his regular duties effective November 16, 1993. Plaintiff returned to his regular duties with defendant-employer at this time.
6. By December 3, 1993, plaintiff was experiencing knee pain after standing for any length of time and some "popping" of his knee. As a result, Dr. James recommended that the plaintiff remain sitting for 75% of the time that he worked for the next two weeks; however, the defendant-employer did not have any sitting jobs available.
7. The plaintiff continued working until December 18, 1993, but did not return to work after the holidays as scheduled. After three days of unexcused absences from work, plaintiff was terminated from employment with the defendant-employer on or about January 3, 1994.
8. On December 30, 1993, plaintiff went to the hospital emergency room with pain and swelling of the left knee. The plaintiff was taken out of work until January 2, 1994. During his January 4, 1994 visit with Dr. James, plaintiff was experiencing only 50% flexion of the knee due to pain, was diagnosed with a probable medial meniscus injury and effusion and was taken out of work until further notice.
9. On January 10, 1994, plaintiff was evaluated by Dr. Grey Winfield, III who performed a diagnostic arthroscopy of the left knee with an arthroscopic lateral retinacular release on January 18, 1994. Dr. Winfield found the anterior cruciate and both menisci to be intact, and the left patella tendon unstable. Dr. Winfield's post-operative diagnosis was instability of the left patella with no evidence of meniscus tears.
10. Plaintiff participated in a physical therapy program as prescribed by Dr. Winfield; however, plaintiff continued to have persistent pain and swelling of his left knee throughout the course of treatment. By June 6, 1994, Dr. Winfield released plaintiff to return to work in a sedentary position where he could stand and sit intermittently.
11. Plaintiff began working with Hardee's as a dishwasher on or about June 28, 1994. On July 2, 1994, plaintiff's knee popped out of position, and he fell while at work at Hardee's, resulting in a left knee derangement and a temporary worsening of plaintiff's symptoms. At the time of this fall, plaintiff's compensable knee injury had not completely improved nor had his condition stabilized. Plaintiff worked approximately five days for five hours per day at Hardee's.
12. On July 16, 1994, plaintiff was released by Dr. Winfield to return to work with no restrictions. Plaintiff sought a second opinion from Dr. Jerry Barron on July 20, 1994 who, after an examination, released plaintiff to return to work with modified duties of no prolonged standing, no stair climbing, no squatting and no ladder climbing. Dr. Barron recommended a course of physical therapy.
13. By September 1994, Dr. Winfield had no further treatment to offer plaintiff and released him from his care. Dr. Winfield opined that the slip and fall at Hardee's could have caused a meniscus tear in plaintiff's left knee since there was no tear present when Dr. Winfield performed arthroscopic surgery in January 1994. In April 1995, Dr. Barron recommended that plaintiff have a repeat arthroscopy; however, one had not been performed at the time of the hearing.
14. Plaintiff began treating with Dr. Chason Hayes, an orthopedic surgeon, in May 1995. Dr. Hayes opined that plaintiff had not reached maximum medical improvement with respect to his left knee, and that since plaintiff's knee condition did not improve after his initial arthroscopic surgery and physical therapy worsened the symptoms, some earlier diagnosis was missed or some underlying condition was not adequately identified. Greater weight is given to the medical opinion of Dr. Hayes.
15. Following plaintiff's admittedly compensable injury of October 19, 1993, plaintiff was and remains unable to earn the same or greater wages in his employment with defendant-employer or in any other employment. At the hearing before the deputy commissioner, plaintiff's left knee appeared swollen and his left knee cap area was protruding significantly.
***********
The foregoing findings of fact and conclusions of law engender the following additional:
CONCLUSIONS OF LAW
1. On October 19, 1993, plaintiff sustained an admittedly compensable injury by accident to his left knee which arose out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's work-related injury by accident on October 19, 1993, plaintiff sustained an injury to his left knee requiring further medical treatment and supplies. N.C. Gen. Stat. § 97-25.
3. The fall of July 2, 1994 while plaintiff was working at Hardee's was a direct and natural consequence of his prior compensable injury of October 19, 1993 and is therefore compensable. When the primary injury is shown to have arisen out of the employment, every natural consequence that flows from the injury arises out of the employment unless it is the result of an independent cause attributed to plaintiff's own intentional conduct. Roper v. J. P. Stevens Co., 8 N.C. App. 604,175 S.E.2d 342 (1970). Horne v. Universal Leaf Tobacco Processors,119 N.C. App. 682, 459 S.E.2d 797 (1995).
4. Plaintiff's average weekly wage was $254.40 yielding a compensation rate of $169.61 per week. N.C. Gen. Stat. § 97-2(5).
5. Plaintiff has not yet reached maximum medical improvement as a result of his compensable injury, and has been unsuccessful in returning to work with defendant-employer or in any other type of work for which plaintiff is vocationally suited. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to further medical treatment to be provided by his current treating physician. N.C. Gen. Stat. § 97-25.
7. As a result of his compensable injury on October 19, 1993, plaintiff is entitled to receive vocational rehabilitation services to assist plaintiff in returning to productive employment when he has reached maximum medical improvement and is released by his treating physician to return to work. N.C. Gen. Stat. § 97-25.
8. From and after October 19, 1993, plaintiff was and remains incapable of earning his pre-injury wages as a result of his work-related left knee injury and the resultant pain. N.C. Gen. Stat. § 97-29.
9. Defendants are entitled to a credit for payments made to plaintiff for the period from October 19, 1993 through June 10, 1994 and for wages earned by plaintiff while working at Hardee's from on or about June 28, 1994 to July 2, 1994. N.C. Gen. Stat. § 97-42.
10. Defendants' refusal to submit the Form 21 agreement signed by the plaintiff to the Industrial Commission for approval, and defendants' unilateral suspension of payments being made to plaintiff are violations of the requirements of the North Carolina Workers Compensation Act and the Rules of the Industrial Commission which subject defendants to penalties and sanctions, including the payment of reasonable attorney's fees. N.C. Gen. Stat. §§ 97-82, 97-18; Industrial Commission Rules 404, 501.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. For his continuing temporary total disability compensation, defendants shall pay plaintiff at the rate of $169.61 per week from October 19, 1993 until June 28, 1994 and from July 3, 1994 and continuing thereafter at the same rate, until further Order of the Industrial Commission. Defendants, however, are entitled to a credit for payments made during the period from October 19, 1993 through June 10, 1994 and for wages earned by plaintiff while working at Hardee's from June 28, 1994 to July 2, 1994. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to a reasonable attorney's fee as provided herein.
2. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's current counsel, Daniel S. Walden. Plaintiff's former counsel, Randy Duncan, Esquire, shall be paid attorney's fees in the amount of $1,650.00 which represents $100 per hour for the 16.5 hours he expended on the plaintiff's behalf. This attorney's fee shall be paid by the defendant and shall not be deducted from the compensation due the plaintiff. Plaintiff's former counsel, Jeffrey A. Taylor, Esquire, shall be paid attorney's fees in the amount of $ 3,890.40 which represents $100 per hour for the 37.6 hours he expended on the plaintiff's behalf and $130.40 for funds advanced on plaintiff's behalf. This attorney's fee shall be paid directly by the defendant and shall not be deducted from the compensation due plaintiff. Daniel S. Walden, Esquire, plaintiff's current counsel, shall be paid as follows: twenty-five percent (25%) of the compensation due plaintiff shall be paid directly to plaintiff's counsel, Daniel S. Walden; thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's current counsel, Daniel S. Walden. Plaintiff's attorney's fee obligation to Daniel S. Walden shall be reduced by $5,000.00 which shall be paid directly to Daniel S. Walden by defendant and shall not be deducted from the compensation due plaintiff herein.
3. To the extent that the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury, including continued medical care provided by Dr. Chason Hayes, and any surgical services deemed necessary to relieve plaintiff's continuing back pain from his compensable injury. Payment shall be made when bills for the same shall have been submitted on proper forms, through defendant-carrier to the Industrial Commission for approval.
4. Defendants shall provide and plaintiff shall accept vocational rehabilitation services to assist the plaintiff in returning to productive employment when the plaintiff has reached maximum medical improvement and is released by his treating physician to return to work.
5. Defendants shall bear the costs.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________ LAURA K. MAVRETIC COMMISSIONER
S/ __________________ THERESA B. STEPHENSON DEPUTY COMMISSIONER
BSB:jth