ROBERT E. HORNE, Plaintiff v. UNIVERSAL LEAF TOBACCO PROCESSORS, Employer; AETNA LIFE & CASUALTY COMPANY, Carrier; Defendants

No. COA94-886

(Filed 1 August 1995)

### 1. Workers' Compensation § 213 (NCI4th)— prior compensable injury—subsequent automobile accident—no independent intervening cause—aggravation of compensable injury

Plaintiff's October 1992 automobile accident was an aggravation of plaintiff's prior compensable injury of 22 October 1990 and was thus compensable, and the Industrial Commission erred in concluding that it was an "independent, intervening cause" of plaintiff's continuing disability. Even if the automobile accident was an independent, intervening cause of plaintiff's disability, the aggravation of the compensable injury was compensable where there was no evidence that the accident was attributable to plaintiff's own intentional conduct.

**Am Jur 2d, Workers' Compensation §§ 368-371.**

## 2. Workers' Compensation § 408 (NCI4th)— maximum medical improvement—finding unsupported by evidence

The Industrial Commission erred in finding as fact that plaintiff would have reached maximum medical improvement by October 1992 had he not been involved in an automobile accident where there was no evidence in the record that plaintiff's compensable injury had completely improved or that his condition had stabilized.

**Am Jur 2d, Workers' Compensation § 618.**

Appeal by plaintiff from opinion and award of the North Carolina Industrial Commission filed 11 April 1994. Heard in the Court of Appeals 9 May 1995.

On 22 October 1990, plaintiff suffered a compensable back injury at defendant's tobacco processing plant while removing 250-280 pound sheets of tobacco from a conveyor line with the assistance of another employee. On 7 November 1990, the parties entered into an "Agreement for Compensation for Disability" (I.C. Form 21) for plaintiff's back injury which was approved by the Industrial Commission (hereinafter Commission) on 21 November 1990.

Plaintiff was initially treated on the day of the accident by Dr. Michael Bowen and referred to Dr. Michael Glover, an orthopaedic surgeon. On 27 February 1991, Dr. Glover performed a "right sided" laminectomy and discectomy at the L5-S1 level of plaintiff's lower back. Dr. Glover then referred plaintiff to Dr. David Tomaszek, a neurosurgeon. Dr. Tomaszek performed a re-do discectomy at the L5-S1 level of plaintiff's back on 22 June 1992. Sometime in October 1992, plaintiff was involved in an automobile accident. Plaintiff alleges that the accident aggravated his 22 October 1990 injury. Plaintiff is currently under the care of Dr. Tomaszek.

Dr. Glover testified that while plaintiff was under his care, plaintiff was temporarily totally disabled and had not reached maximum medical improvement. Defendant's carrier had plaintiff examined by Dr. Lee Whitehurst on three separate occasions. Dr. Whitehurst initially assigned plaintiff a 15% permanent partial disability rating to plaintiff's back. Dr. Whitehurst testified that plaintiff was able to return to work on 6 October 1992, even though he did not know what type of work plaintiff was engaged in prior to his compensable accident.

On 22 June 1992, Dr. Tomaszek performed a second surgery on plaintiff's back to remove a recurrent ruptured disk at the L5-S1 level. Dr. Tomaszek testified in his initial deposition that he did not fully release plaintiff to return to work and that he would have assigned plaintiff a 25% permanent partial disability rating of plaintiff's back in September 1992. When Dr. Tomaszek was redeposed on 9 March 1993, he had obtained additional information from Dr. Whitehurst and had done an additional examination of plaintiff. Based on the additional information, Dr. Tomaszek testified that the recurrent disk rupture shown on the MRI dated 26 October 1992 may have enlarged or become more symptomatic by the automobile accident of October 1992. Dr. Tomaszek further testified that plaintiff had a "residual recurrent herniated disk" prior to the automobile accident in October 1992 and that the accident worsened the abnormal disk.

Plaintiff testified since he was injured at work on 22 October 1990, he could do very little lifting, walking or standing. He is unable to bend or sit for longer than 45 minutes. Plaintiff has not returned to work since the October 1990 accident.

The Deputy Commissioner found that plaintiff's October 1992 automobile accident was an "independent, intervening cause" of plaintiff's continuing disability and that plaintiff had reached maximum medical improvement as of 31 October 1992. The Full Commission affirmed and adopted the Deputy Commissioner's opinion and award. Plaintiff appeals.

*Gibbons, Cozart, Jones, Hughes, Sallenger & Taylor, by W. Earl Taylor, Jr., for plaintiff-appellant.*

*Battle, Winslow, Scott & Wiley, P.A., by M. Greg Crumpler, for defendant-appellees.*

EAGLES, Judge.

Plaintiff contends that the Commission erred in concluding that plaintiff's automobile accident was an "independent, intervening cause" of plaintiff's continuing disability. Plaintiff also contends that the Commission erred in its factual finding that plaintiff would have reached maximum medical improvement had he not been in the automobile accident. We reverse and remand.

I.

[1] Plaintiff assigns error to the following portion of the Commission's conclusions of law:

1. As a result of the October 22, 1990 injury by accident giving rise hereto and two corrective surgeries necessitated thereby, plaintiff was temporarily totally disabled . . . . [H]owever by the last mentioned date (October 31, 1992) plaintiff would have been able to return to light, sedentary and/or medium work . . . had he not earlier been involved in an automobile accident in October of 1991 resulting in the recurrent disc herniation that has totally disabled him since and is the independent, intervening cause of the continuing total disability that plaintiff has experienced since October 31, 1992.

The aggravation of an injury is compensable if the primary injury arose out of and in the course of employment, and the subsequent aggravation of that injury is a natural consequence that flows from the primary injury. *Heatherly v. Montgomery Components, Inc.,* 71 N.C. App. 377, 379, 323 S.E.2d 29, 30 (1984). Unless the subsequent aggravation is the result of an independent intervening cause attributable to claimant's own intentional conduct, the subsequent aggravation of the primary injury is also compensable. *Roper v. J. P. Stevens & Co.,* 65 N.C. App. 69, 73, 308 S.E.2d 485, 488 (1983). An "intervening cause" in the context of the Workers' Compensation Act (hereinafter Act) is an occurrence "entirely independent of a prior cause. When a first cause produces a second cause that produces a result, the first cause is a cause of that result." *Heatherly v. Montgomery Components, Inc.,* 71 N.C. App. 377, 380, 323 S.E.2d 29, 30 (1984) (quoting *Petty v. Transport, Inc.,* 276 N.C. 417, 426, 173 S.E.2d 321, 328 (1970)).

In *Heatherly,* plaintiff suffered a compound angulated fracture of his right middle distal tibia (right leg) on 24 October 1980 in the course and scope of his employment. On 4 July 1981, plaintiff sustained a compound refracture of his tibia and a fracture of his fibula when his left foot slipped from under him. The Commission held that the fracture of 4 July 1981 was the direct and natural result of the compensable 24 October 1980 injury. The defendants appealed.

Plaintiff's attending physician for the second fracture, Dr. McConnachie, testified that he was aware of plaintiff's previous fracture and that in his opinion, the refracture of plaintiff's tibia was along the same fracture line. Dr. McConnachie also stated that the first fracture of plaintiff's tibia was healing, but was not "rock-solid" at the time of the refracture. The significance of the first fracture not being completely healed at the time of the refracture is that "prior to

complete healing the fractured bone would be weaker than surrounding bone, but after complete healing it would be stronger than surrounding bone." *Heatherly*, 71 N.C. App. at 381, 323 S.E.2d at 31. This Court held that Dr. McConnachie's testimony was sufficient evidence to support the Commission's conclusion that plaintiff's second fracture was the direct and natural result of his original injury.

Here, plaintiff sustained a compensable injury to his back on 22 October 1990. Dr. Michael Glover performed an "L-5 laminectomy on the right with an L-5 S-1 discectomy" on plaintiff's lower back. Dr. David Tomaszek performed a "re-do" discectomy at the L5-S1 level of plaintiff's back on 22 June 1992 to remove a recurrent ruptured disc at that level. Dr. Tomaszek testified that as of 23 September 1992, plaintiff was making reasonable progress after the second surgery and that plaintiff was "able to drive a car, stand, walk, twist, bend, without difficulty." Sometime in October 1992, plaintiff was injured in an automobile accident and his condition worsened. In his first deposition, Dr. Tomaszek testified that in his opinion, the accident of 22 October 1990 was the cause of plaintiff's continuing disability. After his first deposition in this matter, Dr. Tomaszek re-examined plaintiff and obtained additional information from Dr. Lee Whitehurst, who had also examined plaintiff on three prior occasions. Dr. Tomaszek testified at his second deposition, that based on the additional information he had obtained, including an MRI dated 26 October 1992, plaintiff had a recurrent disc rupture at the L5-S1 level, the same area of plaintiff's back as the first surgery. Dr. Tomaszek further testified as follows:

Q. And, Dr. Tomaszek, do you have an opinion as to whether or not the large recurrent disc that you have noticed . . . on the M. R. I. of October 26th, 1992, was [] the result of his work-related injury on October 22 of 1990 or whether it was caused by the automobile accident in late October 1992?

A. Well, there is no way to answer that question definitively, but I feel that the most logical thing that happened is that he did have a recurrent disc prior to his automobile accident, which may have enlarged or become more symptomatic. My justification for saying that is that he was complaining of back and leg pain that was at least moderately severe prior to the accident occurring. After the accident there is no question that it became worse and it's my belief that the disc was at least partially ruptured or may have had a small to moderate size

**HORNE v. UNIVERSAL LEAF TOBACCO PROCESSORS**

[119 N.C. App. 682 (1995)]

rupture which explained his symptoms. The accident may have caused it to rupture further but I don't feel that it caused the disc rupture brand new.

Q. Dr. Tomaszek, in your opinion the fusion that you have recommended for [plaintiff]—is that as a result of the work-related accident on October 22, 1990, or is that as a result of the automobile accident of late October, 1992?

A. Well, the pathology all stems back to the work-related accident. Though his symptoms may have worsened after the automobile accident this man was by no means asymptomatic or at least by report to Dr. Whitehurst comfortable with his surgical results prior even to the automobile accident. So, I do throw the pathology back as it were to the original injury.

There is no evidence in the record that any other physician or medical expert offered a different opinion as to whether plaintiff's automobile accident aggravated his prior injury.

Accordingly, the Commission erred in concluding that plaintiff's October 1992 automobile accident was an "independent, intervening cause" of plaintiff's continuing disability. Furthermore, even assuming *arguendo*, that the automobile accident was an independent, intervening cause of plaintiff's disability, we find no evidence in the record that the accident was attributable to plaintiff's own intentional conduct. *See Roper v. J. P. Stevens & Co.*, 65 N.C. App. 69, 308 S.E.2d 485 (1983); *Starr v. Paper Co.*, 8 N.C. App. 604, 175 S.E.2d 342 (1970). An aggravation of a compensable injury is also compensable, "unless it is the result of an independent, intervening cause attributable to claimant's own intentional conduct." *Roper v. J. P. Stevens & Co.*, 65 N.C. App. 69, 73, 308 S.E.2d 485, 488 (1983). Defendants concede that the record before us does not show that plaintiff's "own intentional conduct" caused the October 1992 automobile accident and his subsequent injury. In sum, we conclude that plaintiff's October 1992 automobile accident was an aggravation of plaintiff's prior compensable injury of 22 October 1990.

II.

[2] Plaintiff also contends that the Commission erred in finding as fact that plaintiff would have reached maximum medical improvement by October 1992 had he not been involved in an automobile accident. We agree.

The term "maximum medical improvement" is not defined in the statutes and has been the source of some confusion. G.S. 97-31 provides compensation for temporary disability during the "healing period." The healing period ends when "after a course of treatment and observation, the injury is discovered to be permanent and that fact is duly established." *Crawley v. Southern Devices*, Inc., 31 N.C. App. 284, 289, 229 S.E.2d 325, 329 (1976). The point at which the injury has stabilized is often called "maximum medical improvement." *Carpenter v. Industrial Piping Co.*, 73 N.C. App. 309, 311, 326 S.E.2d 328, 330 (1985). In *Carpenter*, this Court discussed the term "maximum medical improvement" and its relation to the termination of the "healing period" required by G.S. 97-31.

> [Maximum medical improvement] connotes that a claimant is only temporarily totally disabled and his body healing when his condition is steadily improving, and/or he is receiving medical treatment. Yet, recovery from injuries often entails a healing period of alternating improvement and deterioration. In these cases, the healing period is over when the impaired bodily condition is stabilized, or determined to be permanent, and not at one of the temporary high points. Moreover, in many cases the body is able to heal itself, and during convalescence doctors refrain from active treatment with surgery or drugs. Thus, the absence of such medical treatment does not mean that the injury has completely improved or that the impaired bodily condition has stabilized.

*Id.* at 311, 326 S.E.2d at 330. Here, Dr. Tomaszek testified that prior to plaintiff's automobile accident in October 1992, plaintiff was in the process of recovering from his work-related injury. Dr. Tomaszek testified that he had not released plaintiff to return to work prior to the automobile accident. There is no evidence in the record that plaintiff's injury had completely improved or that his condition had stabilized. Accordingly, the Commission erred in this factual finding.

In sum, we conclude that the Commission erred in concluding as a matter of law that plaintiff's automobile accident of October 1992 was an "independent, intervening cause" of plaintiff's continuing disability and in finding as fact that plaintiff would have reached maximum medical improvement on October 1992 had he not been re-injured in the automobile accident. We reverse and remand to the Commission for further proceedings to determine whether plaintiff

has reached maximum medical improvement, and what additional benefits, if any, to which plaintiff is entitled under the Act.

Reversed and remanded.

Chief Judge ARNOLD and Judge WYNN concur.