Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence AFFIRMS in part and MODIFIES in part the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. At all times relevant to this claim, the employee-employer relationship existed between plaintiff and defendant-employer.
3. At all times relevant to this claim, the employer was self-insured for purposes of workers' compensation coverage with Key Risk Management Services as the servicing agent.
********
Based upon the competent evidence of record, the Full Commission adopts the findings of fact of the Deputy Commissioner with minor modifications and finds as follows:
FINDINGS OF FACT
1. Plaintiff is a male born on June 11, 1961. He has worked in the construction industry since age 16. On or about December 9, 1993, plaintiff was hired to work for defendant as a welder and fitter at a construction site at the Alcatel plant in Tarboro.
2. The parties have not reached agreement as to an average weekly wage for the plaintiff, and no I.C. Form 22 has been submitted. There is otherwise no evidence from which the Commission can make a determination of average weekly wage of the plaintiff on the date of the alleged injury by accident.
3. On the morning of January 19, 1994, plaintiff reported to work as usual. He spent the morning doing welding on a platform in the plant mezzanine. Shortly after his lunch break, plaintiff did some welding underneath the platform which involved working over his head.
4. After he finished the welding, around 2:00 p.m., plaintiff was assigned to work with Jimmy Johnson to relocate a pipe in the floor. This required breaking up the concrete floor with a jack hammer. They then put the pieces of broken concrete into barrels with rollers on the bottom. The barrels were then rolled to a hopper where plaintiff and Johnson would unload them partially by hand and then by lifting the barrel and dumping it into the hopper.
5. On approximately the third trip, as plaintiff and Johnson were picking up the barrel and attempting to dump it into the hopper, the edge of the plastic barrel partially collapsed from the weight of the concrete pieces. As this happened, plaintiff felt a sharp pain down his lower back and right leg. After they had dumped this load, plaintiff went back over to the work area and sat down, and told Johnson his back was hurting.
6. Shortly after this, around 3:30 p.m., plaintiff advised his supervisor, Danny Denton, that he had hurt his back while dumping the concrete. Denton told plaintiff that he should go to the hospital, which he did.
7. Plaintiff was seen at the emergency room at Heritage Hospital, where he related the accident and complained of pain in his back radiating into his right leg. Plaintiff was admitted to the hospital where he stayed until he was released on January 26, 1994. An MRI done on January 20 showed degenerative disc disease at L5-S1 with a mild retrolisthesis of L5-S1 and a mild central disc herniation with mild encroachment upon the thecal sac and right S1 nerve root. It also showed a large anterior disc herniation at L4-5. The final discharge diagnosis was degenerative disc disease at L5-S1 with a mild central disc herniation. Plaintiff was released with instructions that he do no lifting, pushing, or pulling of heavy objects. He was given pain medications and it was anticipated that plaintiff would be followed with conservative treatment. At that time surgery was not planned.
8. On or about January 29, 1994, plaintiff was involved in a domestic dispute which led to an altercation with police. Following the altercation, plaintiff's back pain became severe and plaintiff lost control of his bladder and bowel function. This was the first time following his injury by accident of January 19, 1994, that plaintiff suffered the lost of bladder and bowel control. He was taken to the hospital where he was admitted with a diagnosis of cauda equina syndrome. This is a dangerous condition which can cause significant problems including paralysis if left untreated. Plaintiff was scheduled for emergency surgery. That same day, Dr. Gilbert Whitmer performed an emergency laminectomy and removed the herniated disc fragments.
9. On January 19, 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant, when, as he was dumping a barrel of concrete pieces, the barrel partially collapsed and plaintiff felt a sharp onset of pain in his back running into his right leg.
10. As a result of the injury by accident on January 19, 1994, plaintiff sustained a herniated disc at L5-S1 and L4-5. As a result, plaintiff was hospitalized from January 19-26, 1994. When he was released, the plan was to treat his condition conservatively without surgery.
11. On January 29, 1994 while plaintiff was temporarily totally disabled due to his January 19, 1994 work injury, plaintiff was involved in an altercation with police, which was not related to his employment with defendant. As a result of the altercation, plaintiff developed the condition of cauda equina
syndrome. As noted by Dr. Whitmer, the development of caudaequina syndrome is a very uncommon occurrence, which most likely would not have developed but for the police altercation in which plaintiff was involved.
12. The altercation of January 29, 1994 caused the plaintiff's cauda equina syndrome. Plaintiff's cauda equina
syndrome was caused by an intentional intervening act by plaintiff which was not related to the original injury by accident of January 19, 1994. The emergency surgery performed on plaintiff on January 29, 1994 was performed due to the condition of caudaequina syndrome, and was not a direct and natural consequence of the injury by accident of January 19, 1994. Defendant are not liable for payment of medical expenses arising from plaintiff'scauda equina syndrome.
13. Subsequent to the surgery, on or about February 17, 1994 plaintiff was involved in another altercation with his wife. Plaintiff was seen at the emergency room at Heritage Hospital on February 18, 1994. This altercation aggravated plaintiff's back which was still healing from the surgery. The treatment rendered following this altercation was not necessitated by plaintiff's original injury by accident and defendant is not responsible for medical expenses incurred.
14. Plaintiff later developed a bacterial infection around the disc space, which is one of the possible complications following back surgery. Plaintiff was treated for this and released March 1, 1994. This infection was the direct and natural result of the surgery required for plaintiff's cauda equina
syndrome, and was not a direct result of plaintiff's original injury by accident.
15. Following his injury by accident on January 19, 1994, as of the date of hearing before the Deputy Commissioner on October 17, 1994, plaintiff had not returned to gainful employment. When he was deposed on January 19, 1995, Dr. Whitmer was of the opinion that plaintiff had been unable to return to his job as a construction worker from the date of injury through the date Dr. Whitmer last saw plaintiff which was in January, 1995. He is of the opinion that plaintiff would not be able to return to employment in the construction industry. Dr. Whitmer was unable to state that plaintiff could return to any other gainful employment, as he felt that a Functional Capacity Evaluation was necessary to make that determination. Dr. Whitmer did not distinguish any disability caused by the surgery as opposed to the original back injury itself.
16. Plaintiff has been incapable of earning wages in his prior employment or any other employment since his January 19, 1994 work-related injury by accident. Plaintiff's injury by accident on January 19, 1994 is a significant contributing cause of his disability after January 29, 1994.
********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On or about January 19, 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant as he was lifting and attempting to dump a barrel of concrete pieces, and felt a sharp onset of pain in his back running into his right leg. N.C. Gen. Stat. § 97-2(6).
2. As a result of his injury by accident on January 19, 1994, plaintiff sustained a back injury, more specifically a herniation of the discs at L4-5 and L5-S1. Due to his back injury, plaintiff has incurred medical expenses for treatment rendered which was reasonably necessary to effect a cure, give relief, or lessen any period of disability. Defendant are obligated to pay for all medical treatment provided to plaintiff for his back injury from January 19, 1994 through January 28, 1994 and from March 2, 1994 through the date of hearing and continuing unless such medical treatment was solely related to plaintiff's own intentional conduct. N.C. Gen. Stat. § 97-2(19).
3. On January 29, 1994, plaintiff was involved in an intentional altercation with police, which resulted in additional injury to his back and the development of the condition known ascauda equina syndrome. This altercation, attributable to plaintiff's own intentional conduct, was an independent intervening cause of plaintiff's cauda equina syndrome. Therefore, plaintiff is not entitled to recover for the consequences of the intentional intervening act. Plaintiff is not entitled to recover for the emergency surgery on January 29, 1994 and medical treatment thereafter which resulted from the intentional altercation. Plaintiff is not entitled to recover for the treatment rendered for the bacterial infection in the disc area that was a consequence of the surgery. Horne v. UniversalLeaf Tobacco Processors, 119 N.C. App. 682 (1995).
4. Plaintiff has been temporarily totally disabled since January 19, 1994. Plaintiff's January 19, 1994 injury by accident caused his temporary total disability up to January 29, 1994; thereafter, plaintiff's injury by accident was a significant contributing cause of his temporary total disability through the date of hearing before the deputy commissioner and continuing so long as he remains totally disabled. N.C. Gen. Stat. § 97-29.
*********
Based upon the foregoing findings of fact and conclusions of law, the Full enters the following
AWARD
1. Defendant shall pay all medical expenses incurred by plaintiff as a result of the accident of January 19, 1994 for so long as such treatment is reasonably necessary to effect a cure or give relief or lessen any period of disability but not including the surgery and follow-up treatment for the cauda equina syndrome and treatment for the resulting bacterial infection.
2. Defendant shall pay plaintiff compensation at the rate of two-thirds of his average weekly wage from January 19, 1994 and continuing until further Order of the Commission.
3. An attorney's fee of one-fourth of the compensation awarded plaintiff is approved for plaintiff's counsel to be paid directly to him from the benefits accrued and due plaintiff. Thereafter, every fourth check shall be forwarded to plaintiff's counsel.
4. Defendant shall pay the costs due this Commission.
IT IS FURTHER ORDERED that defendant shall submit an Industrial Commission Form 22 wage chart to plaintiff's counsel within 15 days from this Opinion and Award. Thereafter, the parties shall have an additional 15 days to confer and submit a stipulated Form 22 wage chart or a stipulated average weekly wage to Bernadine S. Ballance, Commissioner. Thereafter, an Amended Opinion and Award will be filed which shall incorporate plaintiff's average weekly wage.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ____________ THOMAS J. BOLCH COMMISSIONER
S/ ______________ DIANNE C. SELLERS COMMISSIONER