The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modification. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Order, at the hearing and after the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer.
3. The employer is a duly-qualified self-insurer under the provisions of the North Carolina Workers' Compensation Act, with its workers' compensation program being administered by Allied Claims Administration.
4. The employee's average weekly wage at the time of her May 3, 1994 injury by accident was $272.65.
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. Plaintiff is a female who was 35 years of age on May 3, 1994. She has a high school education and has been trained and certified as a nursing assistant. Plaintiff started working with defendant-employer as a certified nursing assistant in February 1994. Her job duties included total patient care at the defendant-employer's nursing facility.
2. On May 3, 1994, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with the employer when she injured her back helping a fellow-employee transfer a stroke patient. This accident was the subject of a Form 21 Agreement for Payment of Compensation approved by the Industrial Commission on October 24, 1994.
3. Following her injury by accident, plaintiff received treatment at Valdese General Hospital and from Dr. N. M. Lewis at Caldwell Family Practice and Dr. Paul Brezicki, a family practice physician at Valdese Doctors Clinic. Her complaints were primarily low back pain radiating into her legs, mostly on the right side, with some radiation in the left side.
4. Plaintiff was also evaluated by Dr. P. E. Brown, an orthopaedic specialist who saw her on July 6, 1994 and on September 14, 1994. Dr. Brown reviewed the results from an MRI done on May 19, 1994, which had been interpreted as showing a small central disc protrusion at L4-5. Actually, plaintiff has an extra vertebrae in her back, so the disc protrusion was at L5-6.
5. Plaintiff's back was treated conservatively with an epidural steroid injection on August 1, 1994. Within a day or two of the injection, plaintiff began to experience problems with bladder control.
6. Plaintiff came under the care of Dr. David Hardaway, a urologic surgeon, who first saw her on October 28, 1994, when he assessed her with "cough incontinence." Plaintiff had difficulty controlling her bladder, particularly with coughing, sneezing, or sudden movements. Subsequent studies indicated a motor neurogenic bladder.
7. Plaintiff has continued to experience incontinence and difficulty completely emptying her bladder, and has remained under Dr. Hardaway's care. Under Dr. Hardaway's care, plaintiff was treated with medication and exercises. Plaintiff has learned to do self-catheterization, which she does 3 to 4 times daily. Dr. Hardaway is of the opinion that plaintiff's bladder condition is permanent and will require regular medical monitoring.
8. Although plaintiff did not sustain the type of severe back injury usually associated with a neurogenic bladder, due to the temporal relationship between her back injury and the onset of her incontinence, the medical evidence from Dr. Hardaway and Dr. Scott McCloskey, the neurosurgeon who later treated plaintiff's back injury, indicates that the neurogenic bladder is causally related to the May 3, 1994 accident.
9. On November 14, 1994, plaintiff was seen by orthopaedic surgeon, Dr. John de Perczel, for a second opinion. Dr. de Perczel examined plaintiff and reviewed prior studies, including the CAT scan, MRI, and myelogram. He assessed plaintiff with chronic back strain and an acute disc herniation at L5-6. Dr. de Perczel does not believe plaintiff's bladder incontinence is causally related to her back injury.
10. In assessing the cause of plaintiff's bladder problems, the Full Commission gives greater weight to the opinions of Drs. Hardaway and McCloskey, whose areas of expertise involve neurology and urology. Although the Full Commission finds that the plaintiff did not sustain a severe traumatic back injury, based on the temporal relationship between the back injury and plaintiff's incontinence, and the medical evidence, plaintiff's neurogenic bladder was causally related to the back injury of May 3, 1994.
11. With conservative treatment, including physical therapy and medication, plaintiff's symptoms lessened and her condition improved. In early December, 1994, plaintiff returned to work, beginning with light duty 3 to 4 hours a day. Her weight restrictions were gradually raised and her hours increased until she was back to an 8 hour day sometime around mid-February, 1995.
12. On March 29, 1995, Dr. de Perczel gave plaintiff permanent restrictions of no lifting over 50 pounds by herself and using the assistance of one person lifting up to 200 pounds, and 2 assistants for any lifting over 200 pounds. Plaintiff was able to continue her employment without significant difficulty within these guidelines.
13. Plaintiff reached maximum medical improvement on March 29, 1995 and was released to return to work with no permanent partial disability. Dr. de Perczel felt that the plaintiff had reached a steady state where further improvement was unlikely without any other options for treatment or testing. Although released to return to work, plaintiff continued to experience some back and leg pain in 1995-96, but not to the extent that she became incapable of earning her pre-injury wages.
14. Plaintiff resumed her regular job with the defendant-employer in January 1995 and worked consistently without complaints until after May 4, 1996
15. On May 4, 1996, plaintiff bent over to pick up a throw rug at home and experienced an immediate onset of low back pain. As she attempted to stand up, plaintiff experienced significant pain.
16. Dr. Lewis referred plaintiff to neurosurgeon Dr. Scott McCloskey, who first saw her on June 17, 1996. Dr. McCloskey reviewed the 1994 test results and a new MRI was done following the May 4, 1996 incident. The May, 1996 MRI showed a more significant protrusion of the L5-6 disc which was shown as only bulging or slightly herniated on the 1994 tests.
17. On June 20, 1996, Dr. McCloskey performed an L5-6 diskectomy. He found a markedly ruptured disc impinging the nerve root, and removed a large free fragment of disc material.
18. Following her surgery, sometime in July, plaintiff experienced another acute episode of pain, and Dr. McCloskey assessed a recurrent herniated disc at L5-6. On August 16, 1996, Dr. McCloskey performed another surgery, during which he removed another large disc fragment which was pinching the nerve root.
19. One medical provider indicates that plaintiff had a herniated disc at L5-6, and the acute onset of back pain on May 4, 1996, are causally related to plaintiff's injury by accident of May 3, 1994. In addition there is medical evidence to suggest that the original accident of May 3, 1994 caused the injury at the L5-6 level and set in motion the events which eventually caused the more significant herniation which occurred on or about May 4, 1996.
20. Plaintiff's May 4, 1996 injury and recurrent disc herniation at L5-6 are causally related to her admittedly compensable injury on May 3, 1994 and are compensable.
21. Plaintiff's average weekly wage at the time of her May 3, 1994 injury by accident was $272.65, which yields a compensation rate of $181.78.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's acute onset of back pain which occurred on May 4, 1996, and the disc herniation at L5-6, which was subsequently discovered, are causally related to her original compensable injury by accident of May 3, 1994 and therefore are compensable. The significant disc herniation which occurred on or about May 4, 1996 is the direct and natural result of plaintiff's May 3, 1994 accident which initially caused the injury at L5-6. N.C. Gen. Stat. § 97-2(6); Horne v. Universal Leaf TobaccoProcessors, 119 N.C. App. 682, 459 S.E.2d 797, disc.rev. denied, 342 N.C. 192, 463 S.E.2d 237 (1995).
2. Plaintiff's subsequent recurrent disc herniation at L5-6 is likewise causally related to her original injury by accident and is compensable. N.C. Gen. Stat. § 97-2(6); Horne,supra.
3. Plaintiff's neurogenic bladder is causally related to her original injury by accident of May 3, 1994 and is compensable. N.C. Gen. Stat. § 97-2(6); Horne, supra; Clickv. Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
4. As a result of her herniated L5-6 disc and subsequent recurrent herniation, plaintiff was unable to earn wages in her regular or any other employment and was totally disabled beginning May 4, 1996 and continuing at least through the completion of the evidence before the Deputy Commissioner. N.C. Gen. Stat. § 97-29.
5. At the time the evidence in this case was completed, plaintiff had not yet reached maximum medical improvement and had not been released to return to work. Therefore, no conclusion is drawn as to whether plaintiff may be entitled to compensation for any scheduled injuries, such as permanent impairment for the injury to the back or the bladder; those issues are reserved. N.C. Gen. Stat. § 97-31.
6. Defendant is responsible for payment of all medical expenses incurred by plaintiff as a result of her May 3, 1994 injury by accident for treatment rendered which was or which may be reasonably necessary to effect a cure, give relief, or lessen any period of disability, including treatment for plaintiff's neurogenic bladder. N.C. Gen. Stat. §§ 97-2(19), 97-25.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay all medical bills incurred by plaintiff as a result of her injury by accident of May 3, 1994, for treatment rendered which was or which may be reasonably necessary to effect a cure, give relief, or lessen any period of disability when bills for the same have been submitted and approved by procedures adopted by the North Carolina Industrial Commission.
2. Defendant shall pay plaintiff compensation at the rate of $181.78 per week beginning May 5, 1996 and continuing until further order of the Commission. Such amount as has accrued shall be paid in a lump sum, subject to the attorney's fee approved hereinafter.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph one of this Award is approved for plaintiff's counsel and shall be deducted from the sum due plaintiff and paid as follows: twenty-five percent (25%) of the lump sum due plaintiff under paragraph one of this Award shall be deducted from that sum and paid directly to plaintiff's counsel; thereafter, plaintiff's counsel shall receive every fourth compensation check.
4. Defendant shall pay the costs.
This the ___ day of June 1998.
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
LKM/jth