Upon review of the competent evidence of record with respect to the errors assigned, the Full Commission finds good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 18 November 1996 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff-employee and defendant-employer.
3. Plaintiff's compensation rate at the time of the injury was $316.68 per week.
4. Plaintiff sustained an injury by accident on 27 October 1995, resulting in an injury to his back.
5. Defendants admitted liability and certain benefits were paid.
6. The issues to be determined by the Commission are whether there is a causal connection between plaintiff's current back condition and his original injury by accident, and if so, is surgery now required.
***********
Based upon all of the competent evidence adduced from the record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff sustained a compensable back injury on 27 October 1995 while working as a truck driver for defendant-employer.
2. After his injury, with the exception of a two week period during November 1995 during which plaintiff was written out of work by Dr. James R. Dineen and for which plaintiff received compensation, plaintiff continued to work for defendant-employer in a light-duty capacity, eventually returning to driving trucks.
3. On 15 November 1995, plaintiff was examined by Dr. Dineen who diagnosed him with spondylolisthesis at L5. Dr. Dineen released plaintiff to return to light duty work on 30 November 1995, and instructed him to wear a back brace.
4. On 27 December 1995, plaintiff presented to Dr. Michael D. Gwinn upon referral by Dr. Dineen. Dr. Gwinn diagnosed plaintiff with a preexisting lumbar degenerative disk disease and L5-S1 spondylolisthesis, also preexisting and present since childhood. He opined that plaintiff's fall aggravated the underlying conditions, and recommended continuing to wear the back brace and remaining on light duty for an additional month.
5. On 1 February 1996, Dr. Gwinn reviewed a description of a truck driver position offered to plaintiff by defendant-employer. Dr. Gwinn approved this job as suitable for plaintiff.
6. On 12 April 1996 plaintiff returned to Dr. Gwinn with complaints of continuing lower back pain with intermittent bilateral leg pain. Dr. Gwinn defined plaintiff's condition as mechanical low back pain attributed to symptomatic degenerative changes.
7. On 22 April 1996, plaintiff was examined by Dr. Thomas E. Melin. Dr. Melin agreed with Dr. Gwinn's diagnosis and recommended that plaintiff undergo an EMG/nerve conduction study. This study revealed possible radiculopathy, but no other changes in the extremity were found to corroborate the findings.
8. On 10 May 1996, Dr. Melin determined that there was no evidence of radiculopathy, nor of a worsening of plaintiff's condition since the initial visit. He instructed plaintiff to continue in therapy. Dr. Melin did not recommend surgery as a treatment for plaintiff's condition.
9. On 15 May 1996, Dr. Melin reevaluated plaintiff and, based on plaintiff's continued complaints of pain, ordered a myelogram and CT scan. In addition, Dr. Melin instructed plaintiff resume wearing the back brace. The myelogram revealed "only subtle findings of radiculopathy," and Dr. Melin recommended conservative treatment with physical therapy rather than surgery.
10. Defendants referred plaintiff to Dr. Zane T. Walsh. Dr. Walsh examined plaintiff on 18 June 1996, and diagnosed him with back pain and disk disease. He allowed plaintiff to return to work with the previous light duty restrictions and ordered an EMG.
11. On 25 July 1996, Dr. Walsh assigned plaintiff a five percent (5%) permanent partial disability rating to his back and released him to return to work with lifting restrictions of twenty pounds frequently, forty-five pounds occasionally, and no frequent bending.
12. A videotape was entered into evidence that showed plaintiff cleaning up debris from Hurricane Fran on 14 September 1996. On the tape plaintiff is seen using a chain saw on a tree for approximately three and one half hours. Plaintiff is also seen climbing, lifting heavy objects, and repeatedly bending and stooping. These activities were contrary to the physical restrictions imposed by plaintiff's physicians.
13. On 26 September 1996, plaintiff returned to Dr. Walsh with the complaint that he was unable to drive because of back pain. Plaintiff requested a referral to Dr. Grubb for surgery. Dr. Walsh informed plaintiff that there was no medical reason for his inability to drive.
14. On 24 October 1996 plaintiff presented to an orthopedic surgeon, Dr. Paul B. Suh. Plaintiff gave a history of his 27 October 1995 injury, and complained of back pain, right-hand numbness and leg symptoms. Plaintiff did not tell Dr. Suh about the extensive manual labor he performed on 14 September 1996.
15. It is more likely than not that the activities which plaintiff performed on 14 September 1996, coupled with plaintiff's preexisting condition, were the sole cause of plaintiff's increased complaints of pain on and after that date. Plaintiff's ability to perform those activities casts doubt on the credibility of plaintiff's complaints of pain before that date.
16. Plaintiff's activities on 14 September 1996 constitute intentional conduct which was an independent, intervening cause of plaintiff's increased complaints of pain on and after that date.
17. Plaintiff's need for continued medical treatment after 14 September 1996 was due to his activities on 14 September 1996 and not to his job-related injury on 27 October 1995.
18. Following his injury on 27 October 1995, plaintiff returned to work for defendant-employer in positions suitable to his restrictions.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's need for medical treatment after 14 September 1996 was not the result of plaintiff's injury on 27 October 1995. G.S. 97-25.
2. Plaintiff does not need surgery as a result of his injury on 27 October 1995. G.S. 97-25.
3. Plaintiff's activities on 14 September 1996 constitute intentional conduct which was an independent, intervening cause of his continued complaints of pain after that date. SeeHorne v. Universal Leaf Tobacco Processors,119 N.C. App. 682, 459 S.E.2d 797 (1995), disc. rev. denied,342 N.C. 192, 463 S.E.2d 237 (1995).
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim for additional medical compensation for the period after 14 September 1996 is hereby DENIED.
2. Each party shall pay its own costs.
 S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER