The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Liberty Mutual Insurance Company is the carrier on risk.
4. Plaintiff suffered a compensable injury by accident on June 20, 1996. Compensation has been paid at various times since the date of injury in this case.
5. Plaintiff's average weekly wage is $457.20 yielding a weekly compensation rate of $304.82.
6. Plaintiff's medical records were stipulated into evidence. Furthermore, the depositions of Kevin Speer, M.D. and Thomas Dimmig, M.D. are a part of the evidentiary record in this matter.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On June 20, 1996, plaintiff injured her left knee while engaged in a physical exercise that she was directed to do as part of a "race awareness" class being conducted by defendant-employer.
2. On July 8, 1996, plaintiff was seen by Dr. Thomas Dimmig, an orthopaedic surgeon, whose initial diagnosis was an internal derangement of plaintiff's left knee. On July 15, 1996, an MRI of the left knee revealed a severe complex tear of the posterior mid-zones of the lateral meniscus with oblique horizontal components.
3. Consequently, on August 14, 1996, Dr. Dimmig performed surgery on plaintiff's left knee and on November 6, 1996 rated her with a 10% permanent partial impairment to her left leg. However, plaintiff continued to have pain and sensitivity of the wound three months post-surgery. Thereafter, on February 16, 1997, Dr. Dimmig released plaintiff to return to work with restrictions of no standing or walking.
4. Plaintiff continued to experience symptoms and Dr. Dimmig treated her with Kenalog and Marcaine injections which were unsuccessful. Therefore, on April 23, 1997, Dr. Dimmig again performed arthroscopic surgery on plaintiff's left knee and, once again, released plaintiff to work.
5. On July 7, 1997, Dr. Dimmig found plaintiff had reached maximum medical improvement and stated that there was a 50% chance she would have degenerative changes in the future as well as degenerative arthritis developing in her knee related to the injury and consequent surgery. Furthermore, according to Dr. Dimmig, nearly 100% of plaintiff's lateral meniscus cartilage had been removed. Plaintiff continued to experience pain but was discharged by Dr. Dimmig on December 5, 1997.
6. Thereafter, on April 27, 1998, plaintiff presented to Dr. Dimmig complaining of persistent pain, which he attributed to the original injury and surgeries. During this visit, plaintiff related to Dr. Dimmig that she slipped at work approximately two weeks prior.
7. On June 29, 1998, an MRI revealed a horizontal cleavage tear of the anterior horn of the lateral meniscus, grade II degenerative changes of the posterior horn of the medial meniscus, small joint effusion and a subchondral cyst of the medial tibial plateau. As a result, on September 23, 1998, Dr. Dimmig performed a partial lateral meniscectomy of plaintiff's left knee. During surgery, Dr. Dimmig's findings were consistent with plaintiff's prior injury and surgeries and did not reveal a new injury. Thereafter, on November 20, 1998, Dr. Dimmig released plaintiff with restrictions.
8. On June 16, 1999, plaintiff was seen by Dr. Kevin Speer, an Orthopaedic Surgeon at Duke University Medical Center, with continuing complaints.
9. On June 22, 1999, an MRI revealed the existence of a prior meniscectomy of the posterior horn of the lateral meniscus, a tear of the anterior horn of the lateral meniscus and associated moderate to large parameniscal cyst extending anteriorly into Hoffa's fat-pad. On July 9, 1999, Dr. Speer performed left knee surgery to excise the cyst.
10. The cysts that Dr. Speer found were a manifestation that plaintiff's arthritis was progressing. Furthermore, according to Dr. Speer, the cysts and the arthritis are consistent with plaintiff's original injury and consequent surgeries.
11. On September 1, 1999 and October 20, 1999, plaintiff saw Dr. Speer with continued complaints of constant knee pain.
12. On February 28, 2000, Dr. Speer rated plaintiff with a 35% permanent partial impairment to her left leg which represented an increase of 10% over previous ratings. Although plaintiff has been rated with several permanent impairments, she continues to suffer pain and require treatment. Plaintiff has not reached the end of the healing period.
13. On May 15, 2000, plaintiff received an injection of her knee that was unsuccessful in alleviating plaintiff's constant pain which is worse when she is walking on concrete.
14. Plaintiff first sought treatment from Dr. James Califf in May 2000 complaining of continuing pain in her left knee pain and some pain in her left hip.
15. Plaintiff's daily activities are limited due to pain. Furthermore, plaintiff is unable to sleep through the night because of pain, unable to stand, walk, sit or lie down for any period of time without having pain. A return to work at this time would be detrimental to plaintiff.
16. The greater weight of the evidence demonstrates that plaintiff's current knee condition including the surgeries of September 23, 1998 and July 9, 1999 is related to plaintiff's original injury by accident of June 20, 1996. Plaintiff's incident in April 1998 was not an intervening cause and any knee difficulties thereafter are a direct and natural result of her original injury.
17. Plaintiff has received benefits for time out of work through total or partial disability or through the employer's short-term disability plan for the period of June 1997 through September 26, 2000. Plaintiff has not worked since July 17, 2000.
18. Plaintiff has filed a Form 18M requesting future medical treatment pursuant to N.C.G.S. § 97-25.1 and has demonstrated by the greater weight of the medical evidence that a substantial risk exists for future medical treatment relating to plaintiff's knee.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On June 20, 1996, plaintiff sustained an injury by accident to her left knee arising out of and in the course and scope of her employment with defendant-employer. Furthermore, the greater weight of the evidence demonstrates that plaintiff's current knee condition including the surgeries of September 23, 1998 and July 9, 1999 is related to plaintiff's original injury by accident of June 20, 1996. Plaintiff's incident in April 1998 was not an intervening cause and any knee difficulties thereafter are a direct and natural result of her original injury. N.C.G.S. § 97-2(6); Horne v. Universal Leaf TobaccoProcessors, 119 N.C. App. 682, 459 S.E.2d 797 (1995).
2. Subject to a reasonable attorney's fee and defendants' credit, plaintiff is entitled to ongoing total disability benefits as a result of her left knee injury beginning July 17, 2000 at the rate of $304.82 per week and continuing. Plaintiff has failed to prove that she is permanently and totally disabled at this time. N.C.G.S. § 97-29.
3. Under the circumstances there is a substantial risk that plaintiff will need future medical treatment for her left knee condition. Therefore, plaintiff is entitled to reasonably necessary medical treatment relating to her compensable injury which tends to effect a cure, provide relief or lessen the period of disability. N.C.G.S. §97-25; § 97-25.1.
4. Defendants are entitled to a credit for short-term disability benefits paid to plaintiff. N.C.G.S. § 97-42.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff, subject to an attorney's fee and the credit allowed, total disability compensation at a rate of $304.82 per week from July 17, 2000 until further order of the Commission. The accrued amount shall be paid to plaintiff in a lump sum, subject to a reasonable attorneys' fee approved in the amount of 25% which shall be deducted and paid directly to plaintiff's attorney. Thereafter, defendants shall forward every fourth compensation check directly to plaintiff's attorney.
2. Defendants shall pay all reasonably necessary medical expenses resulting from plaintiff's compensable injury of June 20, 1996 for so long as it tends to effect a cure, give relief, or lessen plaintiff's period of disability.
3. Defendant shall pay the costs.
This the ___ day of August 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER