***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Ledford, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. An employer-employee relationship existed between defendant-employer Lee's Plastering and plaintiff on or about July 4, 2000, the date of the compensable injury reflected on I.C. File Number 143955.
2. At all relevant times, defendant-employer regularly employed three or more employees and was subject to and bound by the North Carolina Workers' Compensation Act.
3. Plaintiff's average weekly wage is $596.33, which yields a weekly compensation rate of $397.57.
4. Plaintiff suffered a compensable injury by accident on or about July 4, 2000.
5. The parties agreed to a set of Stipulated Medical Records, which were then forwarded to the Commission via Shelley Coleman's letter of August 28, 2002.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of hearing before the Deputy Commissioner, plaintiff was 51 years of age. He graduated from high school in 1969, and completed one-half year of college. Plaintiff has worked in the plaster and sheetrock industry for about 20 years.
2. On or about July 4, 2000, plaintiff was working as a plasterer for defendant-employer Lee's Plastering Service when he suffered a compensable injury to his back. Plaintiff was assisting a co-worker with the removal of a sink during a demolition process. While they removed the sink and carried it out to the hall, plaintiff suffered a specific traumatic incident when he had an onset of pain in his back.
3. Despite his back pain, plaintiff remained at work and did not seek immediate medical treatment. The next day he told his supervisor that he had hurt his back the day before, and the supervisor told him to see a doctor if needed. Plaintiff did not seek treatment until August 28, 2000, when he went to Randolph Urgent Care.
4. Plaintiff first began treating with Charlotte Orthopedic Specialists on October 13, 2000, when he was examined by Dr. Elmer Pinzon. Dr. Pinzon diagnosed plaintiff with chronic cervical and lumbar strain and authorized him to return to work without restrictions. When plaintiff visited Dr. Pinzon again on November 30, 2000, he was placed on light-duty status with restrictions of no lifting greater than 25 pounds and no repetitive bending, stooping, squatting, or kneeling.
5. After several visits, plaintiff was again examined by Dr. Pinzon on August 9, 2001. During that visit, Dr. Pinzon continued plaintiff on light-duty status, modified his lifting restriction to 20 pounds, and referred plaintiff to Dr. Leon Dickerson.
6. Dr. Dickerson saw plaintiff on August 16, 2001, when he diagnosed plaintiff with discogenic disease at L3-4, L4-5, L5-S1; acute low back pain secondary to injury, with mild spinal stenosis at L4-5; and right L5 radiculopathy. He authorized plaintiff to remain out of work, and sent him to physical therapy.
7. Dr. Dickerson saw plaintiff again on September 25, 2001, and noted that plaintiff had been attending physical therapy sessions and, as a result, felt "better and stronger." Consequently, Dr. Dickerson returned plaintiff to work with restrictions of lifting 40 pounds occasionally, 15 pounds frequently, and no prolonged stooping, bending, squatting, kneeling, or twisting.
8. Plaintiff went to work until about 2:30 or 3 p.m., but had back pain. Around September 26, plaintiff left his employment with Lee's Plastering Service. On September 27, 2001, plaintiff returned to Dr. Dickerson and stated that he did not believe that he could do the work assigned to him by his employer, as he had to do a considerable amount of bending. Dr. Dickerson took him out of work, and noted that he believed plaintiff's back condition would "eliminate dry wall as an occupation."
9. The evidence presented at the hearing showed that although plaintiff could not perform his full duties, and most likely could not do the work assigned by defendant-employer, plaintiff did some work as a plasterer at some time after September 26, 2001, and before his eventual back surgery on November 12, 2001. Plaintiff did some repair work for Wingate Baptist Church, for which he submitted an invoice in the amount of $3,000. Plaintiff's testimony shows that he was able to do this work as it was within his restrictions.
10. On November 12, 2001, plaintiff underwent a decompressive laminectomy and fusion at L4-5 to correct his spinal stenosis and degenerative disease at L4-5. Plaintiff has remained out of work since he underwent those surgical procedures.
11. On October 18, 2002, defendants submitted a Form 60, Employer's Admission of Employee's Right to Compensation, and conceded the issue of plaintiff's disability from the date of his surgery through the present and ongoing until he returns to work. Defendants issued a check in the amount of $19,083.84 for past TTD benefits owed and began issuing weekly disability payments to plaintiff. Defendants have clearly conceded the issue of ongoing disability from the date of plaintiff's surgery and, thus, that issue is rendered moot and is no longer before the Commission.
12. Since his surgery in November of 2001, plaintiff has undergone physical therapy for his back. He contends that he has injured his right foot and has suffered a hernia during those physical therapy sessions.
13. On March 3, 2002, plaintiff visited the emergency room complaining of foot pain, at which time he denied that he suffered any injury. On May 31 and June 4, 2002, Plaintiff reported to his physical therapist that he felt a "tingling" sensation in his right foot. However, Plaintiff has been unable to identify, and has in fact denied, a specific event or accident that precipitated his right foot pain. Dr. Dickerson testified that he cannot causally link Plaintiff's foot complaints to his back injury. The greater weight of the evidence fails to support plaintiff's contention that his foot condition was caused by the compensable back injury or by his physical therapy.
14. Plaintiff also contends that he suffered a hernia as a result of lifting activities performed during physical therapy for his back. The evidence of record shows that plaintiff testified that he was doing abdominal strengthening exercises when his physical therapist noticed a bulge in his abdomen. On June 10, 2002, plaintiff went to his primary care physician, Dr. Richardson, who confirmed that he had an abdominal hernia. Later, when plaintiff saw a specialist, Dr. Olowofoyeku, regarding the hernia, he admitted that his prior job duties required him to do lifting, but explained that he had not done any lifting since he last worked for defendant-employer because of his back surgery. Further, the abdominal hernia is noted in Dr. Dickerson's medical record of plaintiff's visit on March 25, 2003, wherein he opined: "From my viewpoint, I would anticipate the causation would be some specific injury that occurred while therapy was going." The Full Commission finds there to be sufficient evidence to show that plaintiff's hernia is a likely result of the post-surgery physical therapy he received and, thus, occurred as a direct and natural consequence of the primary compensable injury that occurred on July 4, 2000. Plaintiff had not yet had surgery to correct the abdominal hernia at the time of the hearing before the Deputy Commissioner.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff was not totally disabled, as defined by N.C. Gen. Stat. §97-29 as a result of his compensable back injury between September 26, 2001, the date he left his employment with defendant-employer, and November 12, 2001, the date of his surgery. The greater weight of the evidence shows that plaintiff did in fact find and engage in work that was within the restrictions given by his treating physician. Therefore, his claim for benefits during this time must be denied.
2. Pursuant to N.C. Gen. Stat. § 97-2(18), for an employee to receive compensation for a hernia, he must prove to the satisfaction of the Industrial Commission that there was an injury resulting in hernia, that the hernia or rupture appeared suddenly, and that it followed an accident and that it did not exist prior to the accident; however, such statutory requirements are not applicable in this case because the evidence of record shows that plaintiff's hernia is a likely result of the post-surgery physical therapy he received and, thus, occurred as a direct and natural consequence of the July 4, 2000, primary compensable injury.See Horne v. Universal Leaf Tobacco Processors, 119 N.C. App. 682,459 S.E.2d 797 (1995); Heatherly v. Montgomery Components, Inc.,71 N.C. App. 377, 379, 323 S.E.2d 29, 30 (1984). Thus, plaintiff is due temporary total disability compensation from June 10, 2002, the date of diagnosis, through the hearing before the Deputy Commissioner and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. An injury, to be compensable, must result from an accident, which is to be considered as a separate event preceding and causing the injury; the mere fact of injury does not of itself establish the fact of accident. See Beamon v. Stop Shop Grocery, 27 N.C. App. 553,219 S.E.2d 508 (1975). The evidence of record fails to establish that plaintiff suffered an accident preceding his alleged foot injury. Plaintiff has failed to causally link his alleged foot complaints to his compensable back injury, and therefore plaintiff's claim for the foot injury must be denied. Id.
4. Plaintiff is entitled to medical treatment reasonably necessary to effect a cure, give relief, or lessen his disability as a result of the abdominal hernia that occurred as a direct and natural consequence of the July 4, 2000, primary compensable injury. N.C. Gen. Stat. §§ 97-2(19) and97-25.
5. Defendants are entitled to a credit for any benefits previously paid, or to be paid, to plaintiff pursuant to the Form 60 agreement. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability at the rate of $397.57 per week from June 10, 2002, through the hearing before the Deputy Commissioner and continuing until further order of the Commission, as a result of the abdominal hernia that occurred as a direct and natural consequence of the July 4, 2000, primary compensable injury. This award is subject to the attorney's fees and credit provided herein.
2. Defendant shall provide to plaintiff medical treatment reasonably necessary to effect a cure, give relief, or lessen his disability as a result of the abdominal hernia that occurred as a direct and natural consequence of the July 4, 2000, primary compensable injury. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
3. Plaintiff's motion for a change of physician is hereby granted. Defendant shall permit plaintiff to treat as necessary with Dr. Samuel Chewning.
4. Plaintiff's claim for past benefits for temporary total disability compensation due to his back injury for the period between September 26, 2001 and November 12, 2001, is denied.
5. Plaintiff's claim for past and continuing benefits for his alleged foot injury is denied.
6. Defendants shall pay to plaintiff's counsel a reasonable attorney fee in the amount of 25% of the compensation due plaintiff pursuant to the prior approval of the Form 60, and the additional compensation awarded plaintiff herein.
7. Defendants shall receive a credit for any benefits previously paid, or to be paid, to plaintiff pursuant to the Form 60 agreement.
8. Plaintiff's request that the attorney's fee be awarded as separate and additional to plaintiff's recovery, pursuant to N.C. Gen. Stat. §97-88.1, is denied.
9. Defendants shall pay the costs.
This 15th day of March 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER