The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Douglas E. Berger and the briefs and arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners holding and enters the following Opinion and Award.
***********
 EVIDENTIARY RULINGS
Before the Deputy Commissioner, plaintiff filed a Motion to Supplement the stipulated medical records with Plaintiffs Exhibit (4), consisting of eight pages of records from the Miller Clinic and Plaintiffs Exhibit (5), consisting of five pages of physical therapy records. Before the Deputy Commissioner, defendants objection to these records being received into evidence was sustained. However, in the interest of justice and pursuant to Industrial Commission Rule 803, upon further review the Full Commission has determined that these medical records should be admitted into evidence. Accordingly, defendants objection is OVERRULED and plaintiffs motion is GRANTED and said records are hereby admitted into the record of evidence.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement as:
 STIPULATIONS
1. The date of plaintiffs alleged injury is 2 August 1995.
2. Michigan Mutual Insurance Company (Amerisure) was the insurance company for defendant-employer on or about 2 August 1995.
3. Plaintiffs average weekly wage will be determined from an Industrial Commission Form 22 Wage Chart to be submitted by defendants.
4. An index of records marked as stipulated exhibit (1) was received into evidence.
***********
Based upon the entire record of evidence, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner on 9 January 1997, plaintiff was forty-four years old, with a high school degree and a certificate for two years of coursework in the field of air-conditioning repair.
2. Plaintiff had a history of back problems prior to 2 August 1995. During 1986, plaintiff underwent a partial hemilaminectomy and a diskectomy on a right lateral disc between the L5 and S1 level as well as a foraminotomy involving the S1 nerve root. In 1987, plaintiff underwent a surgical release of the scar tissue around the S1 nerve root. Prior to his employment with defendant-employer, plaintiff had a fifteen percent (15%) permanent partial disability to his back.
3. Prior to his employment with defendant-employer, plaintiff had been employed by his own company, BHR Construction Company. Plaintiffs company did roofing repairs and renovations.
4. Plaintiff was hired by Mr. Frank Barlowe, owner of defendant-employer, as a general laborer on the Microtel work site. There was no written contract between plaintiff and defendant-employer. Plaintiffs company, BHR Construction Company, was not registered as a subcontractor on the Microtel project with Mecklenburg County. In his job for Mr. Barlowe, plaintiff performed various tasks, but did not perform any roofing or repair renovations.
5. At the Microtel project, plaintiff used equipment provided by defendant-employer and did not supply his own materials in the performance of his duties. Defendant-employer was directly responsible to suppliers for the payment of materials picked up by plaintiff. Plaintiff performed his work under the direct supervision of Mr. Barlowe, and was required to report to work at a certain time each morning. Additionally, defendant-employer provided on the job training to plaintiff regarding many of the general laborer tasks he performed at this site.
6. When plaintiff began working for defendant-employer in April of 1995, he had not signed a subcontractors waiver and had not presented a certificate of insurance to defendant-employer. Plaintiff worked for defendant-employer during April 1995 under a non-written agreement that he would earn twelve dollars an hour for his labor.
7. On 27 April 1995, Mr. Barlowe signed a check made out to "B.H.R. Construction Co(sic) in the amount of $318.00. Plaintiff endorsed the check as follows; "BHR Construction William Cummins.
8. Sometime after plaintiff began working for defendant-employer, Mr. Cledith Taylor was hired by defendant-employer also as a general laborer with duties similar to plaintiffs.
9. On 12 May 1995, plaintiff and Mr. Taylor signed a subcontractors waiver with defendant-employer. The waiver signed by plaintiff indicated that the name of the subcontractor was "Bill Cummins DBA, BHR Construction. The waiver signed by Mr. Taylor indicated that the name of the subcontractor was "Cledith Taylor. Defendant-employer did not withhold taxes from payments to plaintiff and Mr. Taylor.
10. Mr. Taylor continued working for defendant-employer after plaintiffs work at the Microtel job site ended. In 1995, legislation was passed which prevented a general contractor from obtaining a subcontractors waiver as a means of avoiding purchasing workers compensation insurance. Thereafter, defendant-employer placed Mr. Taylor directly on its payroll and began to withhold taxes. Mr. Taylors job duties with defendant-employer remained the same as they had been prior to the decision to put him directly on the payroll. The treatment of Mr. Taylor demonstrates that defendant-employer had a common plan or scheme to avoid payment of higher workers compensation premiums by having general laborers who were actually employees sign subcontractors waivers.
11. On 2 August 1995, Mr. Barlowe was driving a skytrack while plaintiff was on the ground guiding steel columns, lining up the four holes at each columns bottom to the four bolts located on the ground. During the performance of this duty, plaintiff attempted to steady the columns to prevent them from swinging out in front of the skytrack. At one point, plaintiff was holding on to a suspended steel column when it swung, pulling plaintiffs body. Plaintiff experienced the immediate onset of pain in his back as the result of this incident. Plaintiff orally reported his injury to Mr. Barlowe. Mr. Taylor corroborates plaintiffs testimony regarding the reporting of the incident because he overheard plaintiff reporting the incident to Mr. Barlowe.
12. Plaintiff continued working for defendant-employer from the date of the incident on 2 August 1995 until 22 August 1995. During this period, plaintiff continued to experience pain in his back. Over time, plaintiff also began to experience pain in his upper back, his lower left back, left hip and left leg.
13. On 2 August 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident of the work assigned.
14. On 19 September 1995, plaintiff was examined by Dr. Samuel J. Chewning, Jr. at the Miller Orthopaedic Clinic in Charlotte. Dr. Chewning diagnosed plaintiff as having sustained a cervical and lumbar strain as a result of his 2 August 1995 injury by accident. Plaintiff was prescribed medication and was referred to physical therapy for a period of four (4) weeks.
15. During the period of plaintiffs physical therapy treatments, he continued to experience pain and other symptoms related to his 2 August 1995 injury by accident. Despite treatments, as of 18 October 1995, the pain and soreness plaintiff was experiencing was worse than ever before. By 23 October 1995, plaintiff was also experiencing pain in his groin.
16. On 10 November 1995, plaintiff was again examined by Dr. Chewning. On this date, Dr. Chewning released plaintiff to return to medium level work as this is defined by the Dictionary of Occupational Titles. This trial return to work was to be for a period of four (4) weeks, after which plaintiff was to be reevaluated. As of 10 November 1995, Dr. Chewning had not identified any specific date upon which he anticipated plaintiff returning to work without restrictions. Furthermore, as of that date, no definitive opinion was offered by Dr. Chewning regarding the date upon which plaintiff would reach maximum medical improvement and no opinion regarding permanent partial disability was offered.
17. On or about 21 November 1995, plaintiff experienced a flare up of symptoms. This flare up of symptoms occurred while plaintiff was raking leaves at home, when he turned, felt something pull and experienced the onset of pain in his left hip region. Plaintiff immediately contacted Dr. Chewnings office to report his symptoms, but was not able to see Dr. Chewning until 12 December 1995.
18. At the examination on 12 December 1995, Dr. Chewning directed plaintiff to undergo a CT-myelogram. The CT-myelogram revealed that plaintiff had sustained a herniated disc on the left side at the L4-L5 level. This injury was at a different level from the L5-S1 level at which plaintiff had undergone surgery in 1986.
19. On 22 January 1996, Dr. Chewning performed a decompression and micro-discectomy surgical procedure on plaintiff for the disc herniation at the L4-L5 level.
20. Subsequently, after a period of improvement, plaintiff experienced a recurrence of symptoms and was referred to Dr. Craig Bingham. On 15 April 1997, Dr. Bingham performed a second decompression and micro-discectomy surgery at the same level at which Dr. Chewning had operated on 22 January 1996. Dr. Bingham has unequivocally opined that if the 22 January 1996 surgery performed by Dr. Chewning is found to be causally related to plaintiffs 2 August 1995 injury by accident, that the surgery he performed on 15 April 1997 is likewise causally related the 2 August 1995 injury.
21. An employee has the initial burden of proving the extent and degree of their disability. Once disability is proven, the employee is entitled to a presumption of continued total disability until such time as the employee returns to work at the same or greater wages. In the case at hand, plaintiff met his initial burden of proving disability related to the 2 August 1995 injury by accident. Following this incident, plaintiffs symptoms never completely resolved prior to the incident on or about 21 November 1995 that resulted in a herniated disc at the L4-L5 level. Therefore, because plaintiff had met his initial burden of proving disability regarding the 2 August 1995 injury by accident, it was erroneous to again place the burden on plaintiff to prove that his disability subsequent to 21 November 1995 was also causally related to the incident on 2 August 1995. Rather, at that time, the burden of proof was on defendants to prove that any further disability plaintiff may have sustained was not related to the his 2 August 1995 injury by accident.
22. Defendants have failed to prove that plaintiffs disability subsequent to 21 December 1995 was not causally related to his 2 August 1995 injury by accident.
23. There is no evidence that the increase in plaintiffs symptoms following the raking incident on or about 21 November 1995 was the result of an independent intervening cause attributable to plaintiffs own intentional conduct.
24. There was a causal relationship between the surgery performed by Dr. Chewning on 22 January 1996 and the surgery performed by Dr. Bingham on 15 April 1997. Therefore, Dr. Chewnings opinion that plaintiff reached maximum medical improvement on 20 August 1996 is not given any weight.
25. Due in part to the lack of weight given to Dr. Chewnings 20 August 1996 opinion that plaintiff had reached maximum medical improvement, there is insufficient evidence of record upon which to enter a finding regarding the amount of permanent partial disability, if any, plaintiff sustained as the result of his 2 August 1995 injury by accident.
26. There is insufficient credible evidence of record regarding any wages plaintiff may have earned subsequent to his employment with defendant-employer.
27. As a result of his 2 August 1995 injury by accident, plaintiff has been unable to earn wages in his former employment with defendant-employer or in any other employment from 22 August 1995 through the present and continuing.
28. Plaintiffs failure to provide defendants with timely written notice of his injury is reasonably excused given that defendant-employer (Mr. Frank Barlowe) had actual notice of the work related injury. Furthermore, defendants were in no way prejudiced by the delay in receiving written notification of plaintiffs work related injury.
27. On 2 August 1995, plaintiffs average weekly wage was $480.00, yielding a compensation rate of $360.00 per week.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 2 August 1995, there was an employer-employee relationship between plaintiff and defendant-employer. N.C. Gen. Stat. 97-2(2).
2. On 2 August 1995, the parties were subject to and bound by the North Carolina Workers Compensation Act as defendant-employer had three employees, plaintiff, Mr. Taylor and Mr. Barlowe. N.C. Gen. Stat. 97-13(b).
3. On 2 August 1995, plaintiffs average weekly wage was $480.00, yielding a compensation rate of $360.00 per week. N.C. Gen. Stat.97-2(5).
4. Plaintiffs claim is not barred given that his failure to provide defendants with timely written notice of his injury is reasonably excused and because defendants were in no way prejudiced by the delay such notification. N.C. Gen. Stat. 97-22.
5. On 2 August 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in the form of a specific traumatic incident resulting of the work assigned. N.C. Gen. Stat. 97-2(6).
6. Plaintiff having met his initial burden of proving disability related to the 2 August 1995 incident, the burden of proof was on defendants to prove that any further disability plaintiff sustained was not related to the his 2 August 1995 injury by accident. N.C. Gen. Stat. 97-2(9); Watson v. Winston Salem TransitAuthority, 92 N.C. App. 473, 374 S.E.2d 483 (1988). Defendants have failed to prove that plaintiffs disability subsequent to 21 December 1995 was not causally related to his 2 August 1995 injury by accident. Id.
7. There is no evidence that the increase in plaintiffs symptoms or continued disability following the raking incident on or about 21 November 1995 was the result of an independent intervening cause attributable to plaintiffs own intentional conduct. See Horne v.Universal Leaf Tobacco Processors, 119 N.C. App. 682,459 S.E.2d 797 (1995)
8. As the result of his 2 August 1995 injury by accident, plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate of $360.00 per week for the period of 2 August 1995 through the present and continuing until he returns to work or until further order of the Commission. N.C. Gen. Stat.97-29.
9. As the result of his 2 August 1995 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses. N.C. Gen. Stat. 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay to the plaintiff ongoing total disability compensation at the rate of $360.00 per week for the period of 2 August 1995 through the present and continuing until he returns to work or until further order of the Commission. From the amounts having accrued, this compensation shall be pad to plaintiff in a lump sum. This compensation is subject to the attorneys fee approved herein.
2. Defendants shall pay for all related medical expenses incurred as the result of plaintiffs 2 August 1995 injury by accident.
3. A reasonable attorneys fee in the amount of twenty-five percent (25%) of the compensation awarded above is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check payable to plaintiff thereafter.
4. Defendants shall pay the costs, including an expert witness fee in the amount of $215.00 to Dr. Chewning.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER