* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Deluca with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between Plaintiff and Defendant-Employer.
3. Plaintiff suffered an injury by accident to the left thumb on June 12, 2003. Plaintiff's claim for a left thumb injury on June 12, 2003, was accepted via a Form 60 filed on August 24, 2005.
4. Plaintiff's average weekly wage was $474.97, which yields a compensation rate of $316.80.
5. Plaintiff received unemployment benefits of $168.00 a week from November 2003 to March 2004.
 * * * * * * * * * * * EXHIBITS
The following stipulated exhibits were received by the Deputy Commissioner as evidence:
1. Pre-Trial Agreement.
2. NCIC Forms from the June 12, 2003 injury.
3. NCIC Forms from the June 28, 2003 injury.
4. Plaintiff's medical records and index.
5. Plaintiff's responses to Defendants' discovery.
6. Photographs Nos. 1-8.
7. Plaintiff's personnel file.
8. Report of workers' compensation injury (dated 06/12/2003).
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing, Plaintiff was 57 years of age, having a birth date of February 6, 1948. Plaintiff attended school through the eleventh grade. His employment history consisted entirely of manual labor jobs.
2. Plaintiff's job with Defendant-Employer was as a crusher operator. Plaintiff's job duties included observing the dumping of loads of rock by trucks into the chute leading to the crusher, operating the start and stop switch on the crusher and using a pry bar to loosen rocks or using a jackhammer to break up rocks that became wedged in the chute. The pry bar used by Plaintiff was 10-12 feet long and weighed between 30 and 40 pounds.
3. As of June 12, 2003, Plaintiff had been employed with Defendant-Employer for more than a year.
4. On June 12, 2003, Plaintiff was prying a rock with a pry bar when the pry bar twisted. Plaintiff's left thumb was caught between a guardrail and the pry bar. Plaintiff reported the incident to Howard Brown, vice president of production and engineering, who took Plaintiff to Debbie Wright, the plant secretary, to fill out an incident report and then sent Plaintiff to the plant nurse where Plaintiff was given an ice pack.
5. Plaintiff presented to the emergency room at Anson Community Hospital on the same day with complaints of left hand pain and swelling. Dr. Okereke, the attending physician, ordered an x-ray, which showed no evidence of a fracture. Dr. Okereke indicated that the left hand was just mashed and badly bruised.
6. Plaintiff returned to work on June 13, 2003, with his left thumb swollen and crooked. Despite ongoing left thumb pain and swelling, Plaintiff continued to work; however, Plaintiff was forced to primarily use his right hand due to limited grip strength in his left hand and thumb as well as left thumb pain and swelling.
7. Although conflicting evidence has been offered, the Full Commission finds as fact that on or about Saturday, June 28, 2003, Plaintiff fell when the pry bar that he was using to pry a rock came loose, causing him to fall backward, striking his right elbow, right shoulder and buttocks against a wall and cutting his right shoulder. Plaintiff was using his right hand to operate the pry bar because his left hand was still injured from the June 12, 2003, injury. Plaintiff reported this injury to Mr. Carpenter, the grinding room supervisor, because Howard Brown was not at the plant and Brent Cox, Plaintiff's supervisor, was not there. Mr. Brown testified that no one reported the June 28, 2003, accident to him.
8. Plaintiff presented to Fredric Burney, M.D. on Monday, July 1, 2003, with complaints of left thumb pain and swelling as well as right shoulder pain. Dr. Burney ordered an x-ray, which was performed at Anson Community Hospital on the same date and showed a fracture of the distal aspect proximal phalanx of the left thumb. Dr. Burney then referred Plaintiff to Carolina Bone 
Joint where Plaintiff saw Thomas C. Friedrich, M.D., on July 1, 2003. Dr. Friedrich noted that Plaintiff's left thumb was quite swollen and that Plaintiff continued to complain of pain and swelling of the left thumb. Dr. Friedrich diagnosed Plaintiff with a fractured proximal phalanx of the left thumb, placed him in a short arm thumb spica cast, gave him a prescription for Darvocet and placed him on one-handed duty.
9. On July 2, 2003, Plaintiff returned to Dr. Burney. Dr. Burney diagnosed Plaintiff with a fractured left thumb and strained right shoulder and indicated that Plaintiff could continue with medications as well as with light duty work. Dr. Burney also wrote a note to Howard Brown, advising that Plaintiff had strained his right shoulder, that Plaintiff had medication for the right shoulder strain and that Plaintiff should not take medication while working around machinery.
10. On July 3, 2003, Plaintiff returned to Dr. Friedrich, who indicated in his office note that there was some concern at Plaintiff's place of employment about whether the left thumb injury was work-related due to the fact that the x-rays taken at Anson Community Hospital on June 13, 2003, did not show a fracture. Dr. Friedrich reviewed the films and stated that one could see on the films, although they did not obtain a perfect lateral of the distal phalanx, that there was a fracture line, which was un-displaced. Dr. Friedrich believed that they had missed the fracture previously, and that the fracture seen on the x-rays that were taken on July 1, 2003, was the result of the accident that occurred on June 12, 2003, though he incorrectly listed the date of injury as June 19, 2003. Dr. Friedrich continued Plaintiff on modified duty work.
11. Plaintiff continued with one-handed work as a crusher operator until the pain in his right shoulder became so severe that he returned to Dr. Friedrich on July 24, 2003. In his office note, Dr. Friedrich indicated the following: the pain came on because of Plaintiff's using his right arm to hold a pry bar when he was working; that Plaintiff was working basically one-handed due to problem with his left thumb; that Plaintiff had no history of prior shoulder problems and that Plaintiff complained of pain and limited movement. Dr. Friedrich ordered x-rays, which showed that Plaintiff had some arthritic changes around the AC joint, type II acromion. Dr. Friedrich diagnosed bursitis tendonitis of the right shoulder and injected the right shoulder with one cc of 10% Xylocaine and 40 mg of Kenalog.
12. Dr. Friedrich also addressed the left thumb at this appointment. He removed the cast and indicated that Plaintiff's thumb was radially deviated and that there was still tenderness over the proximal phalanx. Due to a mal-union, he placed Plaintiff in FRC for protection. Dr. Friedrich continued Plaintiff on modified duty, one-handed work.
13. Plaintiff continued to work as a crusher operator, using a pry bar to loosen rock in the chute despite the modified duty restrictions imposed by Dr. Friedrich. Plaintiff experienced ongoing pain in his right shoulder while working using a pry bar and was forced to take pain medicine in order to continue working. On August 8, 2003, Plaintiff returned to Dr. Friedrich due to ongoing left thumb soreness and swelling and pain in the right shoulder. Dr. Friedrich ordered an x-ray of the left thumb, which indicated that the fracture had healed in a somewhat angulated condition. Dr. Friedrich also noted that Plaintiff had right shoulder pain with rotation and a positive impingement sign and diagnosed Plaintiff with bursitis and tendonitis of the right shoulder. Dr. Friedrich took Plaintiff out of work until September 8, 2003, referred him to physical therapy at Anson Community Hospital and prescribed Ultram.
14. Plaintiff took the August 8, 2003, work status note, restricting him from work until September 8, 2003, to the secretary, Debbie Wright, at Triangle Brick Company. On August 11, 2003, Mr. Brown contacted Plaintiff and asked him to come to the plant so that he could talk with him. When Plaintiff arrived at the plant office, Mr. Brown informed him that he was to return to work that day. Plaintiff asked Mr. Brown whether he had seen the work status note from Dr. Friedrich restricting him from work until September 8, 2003. Mr. Brown indicated that he had contacted Dr. Friedrich and asked him to change the work status note to light duty, which Dr. Friedrich did.
15. Plaintiff began physical therapy with Anson Community Hospital on August 13, 2003, and was assessed with the following: (i) right shoulder pain and weakness and (ii) stiffness, limited range of motion, decreased strength and decreased grip strength of the left thumb.
16. When Plaintiff returned to Dr. Friedrich on October 6, 2003, Dr. Friedrich noted that Plaintiff was doing better because he had actually been off work for a couple of weeks because employer had no light duty work available. Plaintiff informed Dr. Friedrich that his shoulder had improved a great deal, that he had been working with physical therapy and that he continued to have some numbness involving the ring and little fingers of the left hand.
17. Plaintiff testified, and it is found as a fact that he returned to work on or about October 8, 2003, at which time Defendant-Employer put Plaintiff to work inside the plant. The medical records reflect that Plaintiff then returned to work on October 9, 2003. Plaintiff was using a shovel to remove dirt from underneath a conveyor belt when his right shoulder locked up and he experienced increased pain in the right shoulder and noticed a small mass on the outside of his right arm. Plaintiff returned to Dr. Friedrich the same day.
18. Mr. Brown's testimony at hearing corroborates Plaintiff's testimony with regard to his return to work in October 2003. This is consistent with Dr. Friedrich's medical records, which reflect that Plaintiff returned to work on October 9, 2003, but had a terrible right shoulder lock-up while shoveling dirt. Upon examination after this incident upon return to full-duty work, Dr. Friedrich noted that Plaintiff had returned to work the day before and that Plaintiff had limited motion of the right shoulder and a small prominence over the lateral aspect of the upper arm. The area was tender to the touch and the impingement test was very positive. Dr. Friedrich ordered an MRI and indicated the following: that Plaintiff had very large acromial spur and that he wanted to see if Plaintiff had a rotator cuff tear as well; that conservative measures had not proved effective; and that Plaintiff's job seemed to aggravate his condition. Dr. Friedrich placed Plaintiff back on light duty work restrictions with no use of the right arm.
19. Plaintiff testified, and it is found as a fact, that he was sent home from work following the October 9, 2003, shoveling incident by Mr. Brown. Plaintiff did not hear anything from Defendant-Employer again until January 2004 when he received a letter indicating that his employment had been terminated effective January 5, 2004. Mr. Brown testified, and it is found as a fact, that he put Plaintiff on FMLA.
20. Mr. Cox testified that it was his understanding that Julie Place in Durham, North Carolina was supposed to call Plaintiff and tell him about the FMLA. There is no evidence that she did this. Plaintiff testified, and it is found as a fact, that Plaintiff did not know anything about the FMLA leave. Plaintiff believed that he was terminated in October 2003, as is evidenced by his application and receipt of unemployment benefits from November 2003 to March 2004.
21. Plaintiff was discharged from physical therapy on or about November 14, 2003. In the November 14, 2003 physical therapy discharge summary, the therapist indicated that Plaintiff's discharge diagnosis was left thumb fracture and right shoulder bursitis. The therapist further indicated that a progress report was sent to Dr. Friedrich with a request for continuing therapy and that treatment was discontinued as no further orders were received from Dr. Friedrich.
22. On December 31, 2003, in response to an inquiry from Defendant-Carrier, Dr. Friedrich indicated that Plaintiff had reached maximum medical improvement in reference to his left thumb fracture. Dr. Friedrich further indicated that Plaintiff would be assigned a permanent partial disability rating to his left thumb, but that he would need to see Plaintiff prior to assigning a rating.
23. Defendants denied the claim regarding the right shoulder on April 12, 2004, in a Form 61. Defendants' reasons for denying the case were the following: discrepancies as to how and when the injury occurred and that Defendant-Carrier was unable to obtain Plaintiff's statement to complete the investigation. Plaintiff testified that he had an unrelated angina in 2004 and was hospitalized for that for three days, but he otherwise was in good health save the compensable left hand and right arm and shoulder injuries that are the subject of this litigation.
24. Plaintiff returned to Dr. Friedrich on August 23, 2005, with complaints of right shoulder pain, especially with movement and a popping sensation as well as permanent deformity of the left thumb with occasional aching and grip problems. Dr. Friedrich noted that a MRI scan of the shoulder had been recommended in the past but that the workers' compensation carrier had never authorized the scan. Upon examination, Dr. Friedrich indicated the following: (i) right shoulder pain with abduction past ninety degrees; (ii) rotation also painful; (iii) impingement sign positive; (iv) good strength of abduction as well as external rotation; and (v) left thumb revealed deformity of radial deviation of the distal phalanx. Dr. Friedrich diagnosed Plaintiff with tendonitis of the right shoulder with possible rotator cuff injury and a malunited fracture of the left thumb and again recommended an MRI scan of the shoulder. Dr. Friedrich further indicated that Plaintiff was to be on light duty work restrictions until he was re-evaluated. At this appointment, Dr. Friedrich assigned a three percent rating to Plaintiff's thumb.
25. The parties took the deposition of Dr. Friedrich on December 6, 2005. At that time, Dr. Friedrich testified to a reasonable degree of medical certainty, and the Full Commission finds as fact, that Plaintiff's compensation for his left hand injury by overusing his right arm on the pry bar was responsible for his right shoulder and arm problems. Dr. Friedrich also testified, and the Full Commission finds as fact, that the left had progressed well but the right shoulder continued to get worse. He also clarified that Plaintiff's restriction of no use of the right arm continued from the October 9, 2003, visit until present and that the condition of Plaintiff's right shoulder had not changed. Dr. Friedrich's testimony is deemed to be credible.
26. The Full Commission finds that Plaintiff's right shoulder over-use condition was a natural and direct result of his compensable injury of June 12, 2003.
27. Plaintiff is not at maximum medical improvement with respect to his right shoulder condition.
28. Plaintiff testified that he did not attempt to find work within his light duty restrictions following his termination in January 2004 because to do so would have been futile. Plaintiff was restricted from using his right shoulder by Dr. Friedrich and use of his left hand was limited. Plaintiff testified, and the Full Commission finds as fact, that this ruled out manual labor, including work in logging and textile mills. Plaintiff has only performed manual labor, and Defendant-Carrier failed to assist Plaintiff in finding another job or retraining him for another job. In light of Plaintiff's age, education, and work restrictions, the Full Commission finds it would be futile for Plaintiff to seek employment.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On June 12, 2003, Plaintiff sustained an admittedly compensable injury to his left thumb, which substantially restricted his use of his left hand and left arm. N.C. Gen. Stat. § 97-2(6).
2. As a natural and direct consequence of that compensable injury, Plaintiff developed a compensable over-use condition in his right shoulder in July 2003. See Horne v. Universal TobaccoLeaf Processor, 119 N.C. App. 682, 685, 459 S.E.2d 797, 799
(1995).
3. The written notice requirement of Section 97-22 of the North Carolina General Statutes does not apply to the natural consequences of an injury. See N.C. Gen. Stat. § 97-22.
4. Section 97-22 of the North Carolina General Statutes does not bar Plaintiff's recovery of benefits. See N.C. Gen. Stat. §97-22.
5. A claimant may show disability through the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions (i.e., age, inexperience, lack of education) to seek other employment.Russell v. Lowes Prod. Dist., 108 N.C. App. 762, 765,425 S.E.2d 454, 457 (1993). In the present case, it would have been futile for Plaintiff to look for work after his termination from Defendant-Employer's employ due to Plaintiff's right arm restrictions, his impaired left hand, and his labor history of solely working manual labor. Id.
6. Plaintiff's total disability results from his compensable June 12, 2003, injury by accident to his left thumb and hand combined with the injuries to his right shoulder and arm, which were natural consequences of this initial injury to the left hand due to overuse of the right arm at work. See Starr v. PaperCo., 8 N.C. App. 604, 175 S.E.2d 342, cert. denied,277 N.C. 112 (1970); and Petty v. Transport, Inc., 276 N.C. 417,173 S.E.2d 321 (1970).
7. Defendants have failed to establish that Plaintiff refused suitable employment pursuant to N.C. Gen. Stat. § 97-32. Plaintiff reasonably believed that he had been discharged, and he did not know that Defendant-Employer considered him on medical leave from October through December 2003, and expected him to return to work. N.C. Gen. Stat. § 97-32.
8. Plaintiff is entitled to receive temporary total disability benefits in the amount of $316.80 per week beginning September 24, 2003, and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
9. Defendants are entitled to a credit for unemployment benefits paid to Plaintiff from November 2003 to March 2004. N.C. Gen. Stat. § 97-42.1.
10. Plaintiff is entitled to the payment of medical expenses incurred or to be incurred as a result of his compensable left thumb and right shoulder conditions as are reasonably required to effect a cure, provide relief or lessen his period of disability. N.C. Gen. Stat. 97-25.
11. Defendants have not defended this action in violation of N.C. Gen. Stat. § 97-88.1. Defendants raised legitimate issues as to the compensability of Plaintiff's right shoulder condition. N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff temporary total disability benefits at the weekly rate of $316.80 from September 24, 2003, and continuing until further order of the Industrial Commission, subject to the attorney fee provided herein. The portion of this award that has accrued shall be paid to Plaintiff in a lump sum.
2. Defendants shall provide to Plaintiff any such medical treatment as Plaintiff's authorized treating physician, Dr. Friedrich, may order to effect a cure, give relief, or lessen the period of disability.
3. Defendants shall pay to Plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to Plaintiff. Fees based upon compensation that has accrued shall be paid to Plaintiff's counsel in a lump sum; thereafter, Defendants shall pay to Plaintiff's counsel every fourth check of compensation due Plaintiff.
4. Defendants shall pay the costs.
This 25th day of October 2006.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER