* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * * EVIDENTIARY RULING
Plaintiff's request to add South Carolina Workers' Compensation Forms as New Evidence is hereby ALLOWED. Plaintiff's requests regarding temporary total disability and medical compensation are addressed herein.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer.
3. Defendant-employer regularly employed three or more employees.
4. Defendant-carrier, Harleysville Mutual Insurance Company, is the carrier on the risk.
5. The date of injury is May 7, 2003.
6. Defendants filed a Form 60 on May 28, 2003 admitting the compensability of plaintiff's injury.
7. Plaintiff's average weekly wage is $531.16, which results in a weekly compensation rate of $354.12.
8. Dr. T. Kern Carlton has been plaintiff's authorized treating physician since December 2003.
9. Prior to August 5, 2004, defendants retained Lavonne Mitchell to provide vocational rehabilitation services to plaintiff.
10. Plaintiff returned to work on August 31, 2004 through November 3, 2004 and from January 3, 2005 through January 24, 2005.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. On the date of the hearing before the Deputy Commissioner in this matter, plaintiff was 40 years of age.
2. Plaintiff has a high school diploma, an associate's degree in business administration, as well as a marketing certificate.
3. On May 7, 2003, plaintiff was employed by defendant-employer as a route distributor. On that date, plaintiff injured her back while moving a large magazine rack. Defendants admitted the compensability of plaintiff's injury on May 28, 2003.
4. Plaintiff was initially treated by Dr. Scott K. Trufant with Troyer Family Practice on May 8, 2003. Plaintiff underwent an MRI on June 2, 2003 of both the cervical and lumbar spine. The lumbar MRI did not show any abnormalities, but the cervical MRI demonstrated foraminal stenosis and severe degenerative canal stenosis with slight cord compression and impingement at C 4-5, C5-6 and C6-7. Because of these findings, Dr. Trufant referred plaintiff for a neurosurgical evaluation and treatment by Dr. Mark Redding and Dr. David Jones.
5. On September 24, 2003, plaintiff came under the care of Dr. Davis S. Jones, neurosurgeon, until December 31, 2003. Plaintiff opted against surgery, and came under the care of Dr. T. Kern Carlton at The Rehab Center in Charlotte, North Carolina.
6. Plaintiff was diagnosed with a cervical strain, resolved lumbar strain, cervical degenerative disc disease, chronic pain syndrome, cervicogenic headaches and a history of anxiety. Plaintiff's injury on May 7, 2003, caused the lumbar and cervical strains and triggered plaintiff's chronic pain syndrome and cervicogenic headaches. The injury also aggravated plaintiff's pre-existing cervical degenerative disc disease.
7. On April 7, 2004, plaintiff started a six-week comprehensive rehabilitation program at the Rehab Center. The program was designed to help plaintiff get back into a daily *Page 4 
routine so that she could eventually return to work. Plaintiff put forth excellent effort in the rehabilitation program.
8. Plaintiff continued under Dr. Carlton's care until May 11, 2004, at which time plaintiff reached maximum medical improvement after completing the program. Plaintiff was given a ten percent (10%) permanent partial impairment rating and lifting restrictions of up to 25 pounds occasionally. These restrictions were permanent and remain in place through the current time.
9. Plaintiff started to look for work the day after her release from the rehabilitation program at the Rehab Center. She looked for jobs in classified ads, newspapers, through friends and other resources.
10. Plaintiff's neck pain continued after her discharge from the rehabilitation program, but the program had helped her control the pain enough so that she felt good enough to try to return to work.
11. By August 2004, defendants retained Lavonne Mitchell to provide vocational rehabilitation services to plaintiff. At approximately the same time in which Ms. Mitchell became involved, however, plaintiff had located a job on her own with Delectables by Holly. Ms. Mitchell did not screen this job for suitability, nor did she help plaintiff find this job through the vocational rehabilitation services she was providing.
12. On or about August 29, 2004, plaintiff was involved in a motor vehicle accident, in which she sustained an injury which temporarily aggravated her neck pain. This aggravation was minor and of short duration.
13. On August 31, 2004, plaintiff started to work at Delectables by Holly, a catering company. A Form 28T was not filed at the time plaintiff returned to work. *Page 5 
14. Plaintiff was hired to work as an operations manager doing an office job, and the job appeared to be within the restrictions imposed by Dr. Carlton when plaintiff was applying to work there. However, the job eventually required plaintiff to carry carts and trays of food at catering sites, which weighed approximately forty and ninety pounds. Plaintiff's lifting at Delectables by Holly exceeded the 25-pound restriction imposed by Dr. Carlton in May 2004.
15. Plaintiff worked for Delectables by Holly until she was terminated on November 3, 2004.
16. Plaintiff called Ms. Mitchell to inform her of the termination and to pursue other job opportunities. Ms. Mitchell contacted defendants, who instructed Ms. Mitchell to find out why Delectables by Holly had terminated plaintiff. Ms. Mitchell's vocational reports show that on November 8, 2004, the owner of Delectables by Holly informed Ms. Mitchell that plaintiff "was terminated due to her not being able to physically handle the position."
17. Despite knowledge that plaintiff's job had ended, at least in part because her work exceeded her injury-related physical limitations, defendants ended plaintiff's vocational rehabilitation on November 29, 2004.
18. Between November 3, 2004 and January 2, 2005, plaintiff made a reasonable effort to find other work, but without success. Eventually she was hired by Kerhules News, a job which she found on her own without the assistance of Ms. Mitchell or any vocational rehabilitation services.
19. Plaintiff began work with Kerhules News on January 3, 2005. Like defendant-employer, Kerhules News is in the business of distributing magazines to vendors. The company is located in South Carolina. Plaintiff testified that her new employer was aware of her work *Page 6 
restrictions, and that she accepted the job with the understanding that it would not require her to lift more than 25 pounds.
20. On May 10, 2005, Dr. Carlton completed a Form 28U with respect to the period between November 3, 2004 and January 2, 2005. Dr. Carlton explained in a letter with the Form 28U that "the evidence supports the fact that [plaintiff] made a genuine attempt to return to work, but was unable to work due to her restrictions." Even though defendants received the Form 28U, they did not immediately pay total disability compensation to plaintiff, but paid the total disability compensation the week before the hearing before the Deputy Commissioner in this case.
21. Although the job at Kerhules News started out within plaintiff's lifting restrictions, after approximately one week plaintiff was lifting and carrying magazine bins weighing between 28 and 71 pounds. Plaintiff began to experience pain her shoulders and neck, and told Mr. Kerhules that she could not lift items this heavy.
22. On January 14, 2005, while working for Kerhules News, plaintiff was picking up a heavy bin of magazines and injured her neck. Plaintiff testified that lifting the bin "jerked" her neck and arms and that she experienced a sharp pain from the base of her skull down her spine and that her fingers were swollen and turned blue. Plaintiff was treated at Gaston Memorial Hospital on that date.
23. Plaintiff called Dr. Carlton's office the day after the lifting incident at Kerhules News. Defendants refused to authorize the appointment, alleging that plaintiff should be covered in South Carolina under Kerhules News' workers' compensation coverage. At that time, plaintiff had not filed a workers' compensation claim in South Carolina. (Plaintiff's brief in this *Page 7 
matter indicates that a claim was filed in South Carolina five days after the Opinion and Award entered by the Deputy Commissioner in this matter.)
24. Defendants have presented no evidence of an intervening event that interrupts their admissions of compensability and liability with respect to plaintiff's compensable May 7, 2003 injury. Further, there is no evidence that plaintiff intentionally tried to re-injure herself by performing heavy work activities for a new employer.
25. Plaintiff's job was terminated at Kerhules News on January 25, 2005, as plaintiff could not perform the job adequately because of her injury-related physical restrictions.
26. Plaintiff returned to Dr. Carlton on March 21, 2005. Dr. Carlton subsequently recommended an MRI to investigate the source of plaintiff's increased pain. The MRI was performed on July 12, 2005 and did not appear to show any changes from the prior MRI. Dr. Carlton has not changed plaintiff's work restrictions, although she reports that she feels like her condition is worse with constant pain in her neck radiating into both arms. Plaintiff also reports more frequent migraines.
27. Plaintiff's diagnoses have not changed as a result of the lifting incident with Kerhules News on January 14, 2005. There has been no change in plaintiff's underlying pathology as shown on the MRI findings between June 2003 and July 2005. Dr. Carlton compared the two MRIs and treated plaintiff both before and after the lifting incident in January 2005, which only aggravated plaintiff's compensable injury. Plaintiff's work restrictions have not changed from those imposed by Dr. Carlton in May 2004.
28. At the time of the hearing before the Deputy Commissioner, plaintiff had made reasonable efforts to find another job without success. *Page 8 
29. On May 10, 2005, Dr. Carlton filled out a Form 28 U with respect to the period from January 25, 205 through the present time and continuing. Defendants did not reinstate compensation under the Form 28U until after the date of the hearing in this case.
30. Since January 25, 2005, plaintiff has continued to have migraines and cervical pain that radiates into her upper extremities. Dr. Carlton continues to treat her, and has discussed another neurosurgical evaluation to determine if plaintiff may be a surgical candidate because of her ongoing cervical problems and headaches.
31. Plaintiff's job search efforts after the close of evidence in this matter are not addressed herein.
32. Plaintiff's increase in pain following the January 14, 2005 incident was a manifestation of plaintiff's prior compensable injury, and thus, was not an independent, intervening cause. Further, there is no evidence that the incident was attributable to plaintiff's own intentional conduct.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered an injury by accident on May 7, 2003, for which defendants accepted compensability pursuant to a Form 60. N.C. Gen. Stat. § 97-2(6).
2. Once an injury is found to be compensable, the direct and natural consequences of that injury are also compensable. Dalton v. AnvilKnitwear, 119 N.C. App. 275, 284, 458 S.E.2d 251, 257 (1995). An aggravation of an injury would be compensable unless it is "the result of an independent, intervening cause attributable to claimant's own intentional conduct." Horne v. *Page 9 Universal leaf Tobacco Processors, 119 N.C.App. 682, 687,459 S.E.2d 797, 800-801 (1995), quoting Roper v. J.P. Stevens Co.,65 N.C. App. 69, 73, 308 S.E.2d 485, 488 (1983). As plaintiff's current disability was not the result of an independent, intervening cause attributable to plaintiff's own conduct, she is entitled to benefits for that disability. Id.
3. Plaintiff is entitled to temporary total disability for the period from November 4, 2004 through January 2, 2005 and from January 25, 2005 and continuing. N.C. Gen. Stat. § 97-29. Plaintiff made a reasonable effort to find other work within her restrictions, but was unsuccessful in her efforts. Russell v. Lowes Prod. Distr., 108 N.C. App. 762, 765,425 S.E. 2d 454, 457 (1993).
4. Neither the job at Delectables by Holly nor the job at Kerhules News were suitable employment, since the requirements of both jobs exceeded plaintiff's injury-related restrictions. N.C. Gen. Stat. §97-32; I.C. Rehab. Rule III(G). Neither of these jobs demonstrate plaintiff's capacity to earn wages in the competitive job market.People v. Cone Mills Corp., 316 N.C. 426, 342 S.E.2d 798 (1986).
5. Plaintiff is entitled to receive medical treatment received for her compensable injury, including treatment provided by or recommended by Dr. Carlton. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to the attorney's fee awarded below, plaintiff is entitled to temporary total disability benefits for the period of November 3, 2004 through January 3, 2005 and from January 25, 2005 continuing until plaintiff returns to work or until further order of the Commission. *Page 10 
2. Defendants shall pay for all medical treatment for plaintiff's compensable injury, including treatment provided by or recommended by Dr. Carlton
3. Plaintiff's counsel is entitled to a reasonable attorneys' fee of 25% of all compensation awarded in this Opinion and Award. This amount shall be deducted from the amount owed plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall bear the costs.
This the 12th day of February, 2007.
S/________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/__________________________ CHRISTOPHER SCOTT COMMISSIONER
 S/__________________________ BUCK LATTIMORE CHAIRMAN *Page 1